FASSNACHT *v.* THE EMSING GAGEN COMPANY.

[No. 1,873. Filed February 3, 1897. Rehearing denied June 9, 1897.]

PRINCIPAL AND SURETY.—*Failure of Principal to Sign Instrument.*— Where a person signs a note as surety for another without an agreement that the latter's signature would be obtained, the failure to obtain such signature will not release the surety. *pp. 82, 83.*

SAME.—*Fraudulent Concealment of Facts From Surety.*—One who believes that she is executing a note, simply as surety, for the value of goods purchased by her son from the payee at the time, is entirely released from liability where the payee knew such to be her belief, and did not inform her that a preexisting debt was included. *pp. 83, 84.*

INSTRUCTION.—*Principal and Surety.*—An instruction that if a note in suit "is a perfect note on its face, this is a strong inference that

Fassnacht *v.* The Emsing Gagen Company.

the party signing the same did so as principal, and not otherwise," invades the province of the jury and is erroneous.  *p. 85.*

From the Tippecanoe Circuit Court. *Reversed.*

*Charles H. Henderson,* for appellant.

*G. P. Haywood* and *C. A. Burnett,* for appellee.

BLACK, J.—This was an action upon a promissory note for $219.10, with interest and attorney's fee, brought by the appellee, the payee, against the appellant, the maker.

There was an answer in five paragraphs. The first paragraph was a general denial. The second was a plea of want of consideration. The third alleged that the appellant signed the note as surety for her son, Henry Fassnacht, and that for all of the note over $176.00 there was no consideration. In the fourth, the appellant alleged that she did not execute the note. In the fifth, she alleges that her signature to the note was procured by fraud on the part of the appellee toward the appellant, in this: That the appellant is an old German woman and not able to read the English language, and speaks English quite poorly, and is not versed in the ways of business; that on the date on which the note was signed Peter Gagen, "one of the plaintiffs or members of the plaintiff's firm," came to the appellant's house in the country, and gave the note to appellant to sign; that said Gagen told her that it was all right for her to sign the note, as she was going security for her son Henry, that Henry had purchased goods at appellee's place of business, and said she was to go his security; that he did not tell her the amount of the note, nor did she know the amount; that she signed the note with the understanding that she was to go her son, Henry Fassnacht's, security; that her

VOL. 18—6

son Henry never signed the note as principal, nor did he owe or purchase goods to the amount of $219.10 of the appellee; that her son Henry purchased of the appellee the sum of $176 worth of goods, and no more; that the appellee fraudulently and without right made out the note for $219.10, and fraudulently procured the appellant's signature thereto with the intent to cheat and defraud the appellant; that the note was without any consideration whatever; that the appellant never owed the appellee any sum of money; that she never agreed to stand good for any goods purchased by her son Henry, or any other person, from the appellee; that she signed the note believing that she was only giving security for her son Henry; that the appellant failed to get said Henry Fassnacht to sign the note; that he never did sign it; and that it was given without consideration to the appellant. The fourth and fifth paragraphs of answer were sworn to by the appellant.

The appellee replied to all the paragraphs of answer except the first by general denial.

The cause was tried by jury, and a verdict was returned for the appellee in the sum of $201.10, of which the sum of $25 was for attorney's fee.

The appellant's motion for a new trial was overruled, and this ruling is assigned as error. Under this assignment the appellant has insisted in argument, first, that the verdict was contrary to law, and not supported by sufficient evidence.

The evidence was somewhat conflicting as to whether the appellant signed the note with the understanding that she was doing so as "security" for her son Henry, though there was much evidence to the contrary.

There was no evidence whatever of any promise or agreement that the signature of the son would be secured or made, or of any direction from any person

that it should be obtained; nor was there any allegation of such a promise or agreement or direction in the pleadings.

The mere fact, if it was a fact, that the appellant executed the note as "security" for her son would not release her, though it was signed by her alone. See McQuesten v. Noyes, 6 N. H. 19; Fowler v. Brooks, 13 N. H. 240; Brandt, Sur. and Guar., section 38.

In the amount of the note was included the sum of $43.00, which was a preexisting debt of the son Henry to the appellee, or which he had agreed to pay the appellee for goods theretofore furnished by the appellee to a saloon conducted by one Rosenburger, or in his name. At the time the note was given, the son, Henry, purchased goods to the amount of $176.10 from the appellee. There was some evidence to the effect that it was agreed between the appellee and the said Henry that this preexisting debt should be included in the note. But as to whether there was such an agreement, the evidence was conflicting.

There was evidence from which it might have been inferred by the jury that the appellant had no knowledge that the note was being given for more than the amount of the goods then being purchased by her son, and that she understood that she was giving the note for goods so then being purchased only, and that the appellee, the payee, who presented the note for her signature in the absence of her said son, knew that the appellant was thus misinformed concerning the consideration, and did not inform her that the amount of the note included the preexisting debt, but concealed that fact from her. We do not intend to intimate an opinion as to the preponderance of the evidence upon this question. This question of fraudulent concealment, and the question as to the appellant's suretyship were both before the jury for decision.

If the appellant signed as a surety, although she must be held bound to know the amount of the note which she signed without any misrepresentation or concealment on the part of the payee concerning the contents of the note, yet if she believed she was giving the note for its full amount for goods then purchased by her son from the payee, and the payee knew this to be her belief, it was his duty to inform her that it included the preexisting debt, and the failure to perform this duty was in law a fraud upon the surety which would release her from the entire contract.

In *Warren* v. *Branch,* 15 W. Va. 21, 35, the court concluded that unless inquired of by the surety, a creditor is under no obligation to disclose facts in no manner connected with the business which is the subject of the suretyship, though such facts would probably have a decided influence on the surety in entering into or deciding to enter into his contract of suretyship; but that if a material fact connected with the contract of suretyship which might influence the surety in entering into the contract, is fraudulently concealed with a view to benefit the creditor, such concealment, though no inquiry has been made by the surety, would vitiate the contract of suretyship, and discharge the surety.

In *Franklin Bank* v. *Cooper,* 36 Me. 179, it was said: "To receive a surety known to be acting upon the belief that there are no unusual circumstances by which his risk will be materially increased, well knowing that there are such circumstances, and having a suitable opportunity to make them known, and withholding them, must be regarded as a legal fraud, by which the surety will be relieved from his contract."

It was held in this case that the bond of a bank cashier, framed to cover past as well as future delinquencies, would be invalid against a surety if his name was procured at the desire of the directors, they know-

ing that past defalcations existed, of which he was ignorant, and withholding the knowledge from him, though with a suitable opportunity to communicate it.

In *Doughty* v. *Savage*, 28 Conn. 146, 155, it is said: "It is a clear and well settled principle that a security given by a surety is voidable on the ground of fraud, if there is, with the knowledge or assent of the creditor, such a misrepresentation to, or concealment from the surety, of the transaction between the creditor and his debtor, that, but for the same having taken place, either the suretyship would not have been entered into at all, or being entered into, the extent of the surety's liability might be thereby increased." See, also, *Farmers' Nat'l Bank* v. *VanSlyke*, 49 Hun. 7; *Ham* v. *Greve*, 34 Ind. 18; *Taylor* v. *Lohman*, 74 Ind. 418; *Wilson* v. *Town of Monticello*, 85 Ind. 10, 17; *Lucas* v. *Owens*, 113 Ind. 521; *Springfield, etc., Co.* v. *Park*, 3 Ind. App. 173; Brandt, Sur. and Guar., section 419.

Thus it was a material question whether the note was signed by the appellant as principal or as surety.

The court in one of its instructions told the jury that if the note in suit "is a perfect note on its face, this is a strong inference that the party signing the same did so as principal, and not otherwise."

This instruction was erroneous. It invaded the province of the jury; inasmuch as it is for the jury, and not for the judge, to draw inferences of fact from the evidence, and to pass upon the weight or strength of evidence from which inferences of fact are to be drawn. *Union, etc., Co.* v. *Buchanan*, 100 Ind. 63; *Wood* v. *Deutchman*, 75 Ind. 148; *Huffman* v. *Cauble*, 86 Ind. 591; *Louisville, etc., R. W. Co.* v. *Falvey*, 104 Ind. 409; *Pancake* v. *State*, 81 Ind. 93; *Story* v. *State*, 99 Ind. 413; *Home Ins. Co.* v. *Marple*, 1 Ind. App. 411.

For this error the judgment is reversed, and the cause is remanded for a new trial.

### ON PETITION FOR REHEARING.

BLACK, J.—No question arose under the pleadings as to the effect of a promise, agreement, suggestion, or direction to procure the signature of the appellant's son to the note in suit.

If it was understood and agreed between the appellee and the appellant that the note was being given and accepted as a security for an indebtedness of the appellant's son to the appellee, then being contracted upon condition of the procurement of such security, then, whether it was or was not agreed that the son should sign the note, the appellant was entitled to the protection which the rules of law give to a surety, and she would be relieved by a fraudulent concealment as mentioned in our opinion upon the original hearing.

As between her and the payee, she might sustain the relation of surety, and be entitled to be treated as surety, without the procurement of the son's signature, and without any agreement for its procurement, while, as stated in our former opinion, the mere fact that she was a surety would not release her.

It was a disputed question, to be decided by the jury, whether or not she sustained the relation of surety.

If she was to be treated as a surety, and if there was such fraudulent concealment, then she was not merely entitled to be credited with the amount of the pre-existing debt included in the amount of the note, but there could be no recovery against her for any amount.

While the form of the note was a proper matter for the consideration of the jury in determining the question of suretyship, the weight of the evidence should have been left to be determined by the jury.