Hopkins *et al.*, Receivers, *v.* Boyd.

## HOPKINS ET AL., RECEIVERS, *v.* BOYD.

[No. 2,251. Filed June 9, 1897.]

NEGLIGENCE.—*Railroads.—Loading and Unloading Freight.*—A railroad company owes to a person using its cars in loading or unloading freight the duty of using care to protect him from injury; and where such person was in the car shoveling corn, he was not guilty of negligence in remaining in the car and continuing his work while the car was being moved, where he had no notice or knowledge that the car was about to be moved. *p. 67.*

EVIDENCE.—*Defects.—Statement Made by Agent After Injury.—Repair of Defects After Injury.—Notice.—Harmless Error.*—The admission in evidence in the trial of a cause against a railroad company for damages caused by planks projecting from a lumber pile near its track, of statements made by the engineer and conductor shortly after the injury, instructing witnesses who were in the employ of such company to remove such projecting planks was improper, although introduced for the purpose of showing knowledge of such dangerous projections on the part of the company; but

Hopkins *et al.*, Receivers, *v.* Boyd.

where such fact so sought to be proved was clearly established by other uncontradicted testimony, such error was harmless. *pp. 74–79.*

SAME.—*Damages.—Conditions of Defect Before and After Injury —* In an action against a railroad company for personal injuries to a person who was in a car of such company loading grain, caused by reason of plank striking such car while moving past lumber piled near the track, evidence showing the condition of the lumber before and after the injury, was properly admitted for the purpose of showing its condition at the time of the injury. *pp. 79, 80.*

SAME.—*Knowledge of Defects.—Notice.*—Evidence that boards projecting from a pile of lumber struck a passing car prior to an accident caused by such projecting boards, is admissible in the trial of such cause for the purpose of showing notice thereof. *p. 79.*

COMPLAINT.—*Contributory Negligence.*—An averment in a complaint against a railroad company for damages to a person who was in one of the company's cars shoveling corn, that as the car was being hauled, he stepped to the door on the side of the car, and when in that position the sliding door on the side of the car was caught by boards projecting from a pile of lumber near the track, and was closed with great force, thereby striking plaintiff on the side of the head and injuring him, does not show such contributory negligence on the part of plaintiff as to overcome the general averment of freedom from fault. *p. 80.*

From the Posey Circuit Court.   *Affirmed.*

*J. E. Williamson, Gilchrist & DeBruler* and *F. P. Leonard,* for appellants.

*G. V. Menzies,* for appellee.

COMSTOCK, C. J.—This was an action by appellee against appellants to recover damages for personal injuries received by appellee whilst engaged as a laborer in shoveling corn in a box car placed upon the switch of the railway company at New Harmony, Indiana.   A demurrer to the complaint was overruled.   To this ruling appellants excepted.   A general denial was filed.   A jury trial resulted in a verdict and judgment for appellee.   A motion for a new trial was made by appellants, and overruled, and exceptions taken.

The errors assigned are, the overruling of the

demurrer to the complaint, and the overruling of appellants' motion for a new trial.

Appellants discuss the assignments of error in the inverse order of assignment, and we will consider them in the same order.

The second, sixth, seventh, thirteenth, fourteenth, sixteenth, eighteenth, nineteenth, twenty-third, twenty-fifth, twenty-seventh, and twenty-eighth, are not discussed, and under the well established rule are deemed waived.

The first cause assigned for a new trial is that the verdict is not sustained by sufficient evidence. The record discloses that appellee, on the day, and at the place mentioned, entered a box car, pursuant to his employment by a shipper of grain, and with the consent of appellants, shoveled corn forward and backward in the car as the same was hauled to the side openings of the car by teams; that while he was engaged at that work, appellants, for the purpose of moving other cars on the switch to the main track, had to move the car in which appellee was at work a short distance from the switch to the main track; that the intention was that the car in which appellee was at work should be at once returned to its former place on the switch; that some time between the starting of the engine and cars from the switch, and their arrival on the main track, appellee was injured by being struck by a sliding door of the car, and jammed between it and the side of the car, and was found firmly held in that position in an insensible state when the car had reached its former place on the switch; that the car had been assigned by the shipper to be loaded with corn at the place where it was when appellee entered it, and was moved forward to the main track; that more corn was to be hauled which

appellee was to shovel into position. In other words, appellee had not completed, and could not complete his work in the car until it was brought back to be loaded; that all notice and warning as to the movement of the car from the switch to the main track were given and intended for wagons and teams then close to the switch, which, if left standing near by might interfere with the movement of the train.

Appellee is uncontradicted upon the point that he did not hear the signals or know the car was going to move. Appellee is corroborated by the conductor, that he was shoveling corn when the car commenced to move. There was a conflict in the testimony as to appellee's position when the car commenced to move. Several of the appellants' witnesses testified that he was standing in the south opening of the car as it was being moved on the switch towards the east, and was facing the south. Appellee testified that he had reached the south door in shoveling corn, and had just raised up in the opening when he was struck. There is no dispute that there were, on the day of the injury and for about ten days prior, several piles of lumber close to the south side of the switch, and one of them was just east of the place where the box car was standing when appellee began his work. Appellee's witnesses testified to marks or scratches on the side of the car, and a sliver being out of the sliding door; that the car was painted red, and that a projecting plank of a lumber pile, east of where the box car first stood, had red paint on its end after the accident, and that this plank was projecting towards the south side of the switch; that planks of this lumber pile had been heard to crack and scrape the cars on the switch some days before appellee was injured.

Appellants' theory was that the sliding door of the box car was slammed to, and struck appellee by the force of the movement in the jerking of the train when

the engine stopped at the main track. Appellee's contention was that the projecting plank caught the sliding door as the car passed and forced it suddenly and with great force on to him, causing the injury he received.

Appellants' counsel in their able brief contend that, although appellee was in the car upon invitation of the appellants, and had not finished the work he was there to perform at the time he received the injury for which he sues, it was his duty to cease work and leave the car when it began to move from the switch to the main track. The converse of this is, that if appellée did nothing wrong in continuing the work when the car began to move, but of right remained in the car, the appellants owed him the duty of using care to protect him from injury while moving the car, or, if he did not know the car was going to move until after it started, he was not in duty bound to leave the car in motion, for he was not informed it was going to move.

Appellee was not a passenger with a seat assigned him, and with a right to leave it for the purpose of convenience or necessity only, but he was engaged in work in an ordinary box car, with only openings at the sides. The nature of his employment required him to be on his feet moving backwards and forwards to all parts of the car. As the corn was thrown into the car he had to move it to the front or rear end of the car, and had to work from opening to opening. At times, necessarily, he had to have a part of his body in the openings. There was no analogy between the situation of appellee and that of a passenger, nor do the principles of law imposing upon the latter the observance of rules as to the keeping of a seat apply to him.

In *Toledo, etc., R. R. Co.* v. *Hauck*, 8 Ind. App. 367, and in *Pittsburgh, etc., R. W. Co.* v. *Ives*, 12 Ind. App. 602, the doctrine is laid down that a railroad com-

pany which is a common carrier of goods, and by its conduct invites or induces the public to use its premises, such as depots and other places set apart for receiving and discharging freight, is under special obligations to keep such premises safe for such use for all persons coming upon the premises to transact business with such company, and among those who are entitled to this protection are such persons as come there for the purpose of delivering and removing freight.

Appellee was rightfully in the car. We cannot say, as a matter of law, that he was negligent in remaining there, and in continuing his work. There is no evidence in the transcript that appellee knew that the car was about to be moved. Had he jumped from the car while it was in motion he would have left a place ordinarily safe, and assumed an unnecessary risk.

Appellants cite *DeBolt* v. *Kansas City., etc., R. W. Co.*, 123 Mo. 496, 27 S. W. 575; *Cleveland, etc., R. W. Co.* v. *Stephenson*, 139 Ind. 641; *Murphy* v. *New York, etc., R. R. Co.*, 17 N. Y. Supp. 302; *Burns* v. *Boston, etc., R. R. Co.*, 101 Mass. 50.

*Burns* v. *Boston, etc., R. R. Co., supra,* was an action against the railroad company for personal injuries to the plaintiff. It appears that an engine and cars were on the side track of the defendants, and one of the cars was to be loaded with lumber by Norcross & Company, who had a contract with defendants for its transportation; that the plaintiff, being employed by Norcross & Company to assist in placing the car opposite to their lumber, which was on the adjacent wharf of the defendant, uncoupled the car and pushed it opposite to the lumber, not knowing that there was an engine on the track; that in coupling the cars he went between them; that he pushed the car down, walking on the track, and that the defendants' servants backed

the engine and other cars upon him, and he was jammed between the bumpers of the car, and injured. The court held that the plaintiff was guilty of contributory negligence, saying that, "for anything that appears affirmatively, it was the exclusive business of the defendants' agents to place the cars in a position to be loaded by the owners of merchandise. The contract with Norcross & Company did not give the plaintiff a right to go upon the side track, and assist in moving the car down to the place to be loaded, although the car so moved was designed for the use of Norcross & Company. The plaintiff was not requested by the agents of the defendants to go upon the track for such purpose, nor does it appear that they had any notice that he was there; and it would seem that in going there he was a mere trespasser. After the car had been placed in position, and disconnected from the train to which it had been attached, and Norcross & Company had commenced loading it under the arrangement with them, the defendants would indeed be held to such prudence and care in the use of the tracks as would be consistent with the safety of those engaged in loading it. Such was not this case; and if it were, it does not appear that in loading the car it was proper or necessary for the plaintiff to place himself upon the track between the car which he was loading and the rear car of a train to which an engine was attached."

In *DeBolt* v. *Kansas City, etc., R. W. Co., supra,* the deceased being sent by his employers to oversee some of their men unloading stone from a flat car, climbed on the car to speak to the men. While they were talking, a switch engine took the stone car and four other cars behind it out on the same track, then dropped a car, and "kicked" the others back on the side track. The men on the stone car stayed on for a ride. Deceased

and another sat on the end board of the next car, facing the stone car. The "kick" was somewhat harder than it need have been, and the brake on one of the cars would not work. As they were about to collide with the standing car, several persons called to them on the stone car to look out. Deceased's companion threw himself back into the car. Deceased tried to jump or step on to the stone car, but was thrown between the cars, and killed. Those on the stone car were not injured. The court held that deceased's own negligence caused his death. In the opinion the court said: "The case is wholly wanting in those features made prominent in the petition, to wit, that of a workman, busily intent upon his work of unloading, suddenly, and without warning, violently thrown against stationary cars, and hurled from his car by the shock. On the contrary, the facts are, no work of unloading was going on, and the intention to move the car in the switching was a patent, obvious fact to all concerned, and it is not true that Mr. DeBolt was thrown from the car on which his employer's stone was. He had voluntarily left that car, and gone upon a coal car without permission, and, so far as the evidence discloses, without notice to the servants of the company who were doing the switching."

In *Murphy* v. *New York, etc., R. R. Co., supra*, plaintiff in an action for personal injuries, testified that he was hauling coal by team from a gondola car of defendant, from which the coal was shoveled into a wagon by a fellow workman, and that, pursuant to instructions from his employer to see how much coal there was left in the car, he climbed on the platform of the car, and, while there, certain moving cars of the defendant came in contact with the gondola, resulting in the plaintiff's foot being caught between the bumpers, and injured. The man in the car shoveling coal was

not shown to have been incovenienced, nor was it shown that it was necessary for the plaintiff to climb on the platform to get the desired information, nor that the defendant had any reason to suppose he was there. There was no evidence showing that the moving cars were brought to their position in any other than the most careful and usual manner. The court held that the jury was not justified in finding for the plaintiff. The court saying: "It was not shown that the defendant, nor any of its servants engaged in the management and movement of its cars, had any notice or reason to suppose that the plaintiff was or was likely to be on the outside of the car, or in a position to be injured by the contact of other cars with the one being unloaded. They were, no doubt, chargeable with notice that a man was engaged in shoveling coal from the car, and they were bound to use reasonable care not to move their cars in such a way as to endanger his safety; and so it seems they did. The man in the car is not shown to have been in any way disturbed or inconvenienced. The adventure of the plaintiff in climbing up on the end of the car was no part of the operation of unloading the coal, and the information which he sought to obtain for his employer might, it would seem, have been as readily obtained by inspection from either his empty or his loaded wagon, both of which were placed close to the side of the car, as from the precarious footing on the end of the car itself. It may be conceded that he was guilty of no wrong or trespass in climbing upon the car; but even then, in the absence of notice to the defendant that he had or was likely to have done so, he did it at his own risk of the dangers incident to such an undertaking. Under those circumstances, it is impossible to see that the defendant owed to the plaintiff a duty of even ordinary care in the movement of their

cars; but, if such were required, there is nothing to show that it was omitted on the occasion of this accident."

In *Cleveland, etc., R. W. Co.* v. *Stephenson, supra,* the court held that the complaint for personal injury was drawn upon the theory of negligence by the railroad company in causing the injury to the plaintiff, a servant of C., engaged at the time with C. in loading hogs in a car furnished by the railroad company for C. upon his request. It was found that, without notice to appellant of an intention to load said hogs, appellee and one of his employes went to the stock yards of the appellant, where they found on the side track several cars east of the chute; that they pushed one of said cars up to said chute, and loaded the same without the knowledge of the railroad company of the intention so to move said car and to load it with said hogs, and said company did not know of the loading of said car while the loading was in progress. While the appellee was so engaged, the appellant's employes caused three empty cars to be driven upon the switch, and in violent contact with said car, catching the appellee's foot between the car door and a post, and inflicting the injury complained of. The court held that if the appellee, without notice to, or the knowledge of the company, took possession of any one of the cars, moved it to the chute, and loaded it with hogs, he was at best a mere licensee, if not a trespasser. In either case the company owed him no protection from its mere negligence.

The facts in the foregoing cases, upon which appellants rely, are distinguishable from those in the case at bar. The principles of law they announce are not in conflict with those laid down in opinions previously herein cited.

There is a conflict in the testimony of the witnesses

as to the position of appellee a short time before he received the injury. He testified that he had just raised up from his work at the south opening of the car, and that he was not standing in the opening when the car moved. It was for the jury to determine his position from all the evidence. The jury were informed of all the circumstances. The car floor had corn piled on both sides of the space between the openings; he had just cleared that space, and reached the south side of the car; there were no seats. If the jury believed that he was standing in one of the only two openings of the car, they evidently concluded that his conduct was that of an ordinarily prudent man under the circumstances. The jury accepted as proven the theory of appellee that the projecting plank caught the sliding door as the car passed, and forced it suddenly and with great force onto him, causing the injury he received. The jury evidently found that the lumber so near the track was an obstruction to the proper movement of the car, and that, under the circumstances, it was negligence upon the part of the appellants to permit it so to remain; that this projecting plank striking the sliding door, was the proximate cause of the injury, and that appellee was not guilty of negligence proximately contributing to his injury.

The third cause for a new trial is the refusal of the court to give instruction number one, asked by appellants, which was, that the evidence was not sufficient to sustain a verdict for the plaintiff, and directing the jury to find for the defendants. The instruction was correctly refused. The facts and circumstances disclosed by the evidence made a case very properly submitted to the jury.

Causes four, five, eight, nine, ten, eleven, twelve, and fifteen for a new trial relate to the giving of instruc-

tions by the court of its own motion, the giving of in-
structions at the request of the appellee, and to the re-
fusal of the court to give certain instructions besides
number one, refused, asked by appellants. We be-
lieve the instructions, taken together as given to the
jury, fairly stated the law applicable to the case, and
that the instructions which were proper which were
requested by appellants and refused by the court,
were included in instructions given, and that there-
fore appellants were not harmed by these rulings.

We will consider the twentieth and twenty-first
causes for a new trial together. The twentieth cause
is the permitting of a witness, Carl Hill, to testify that
after the accident had happened, the engineer told
him to chop off a plank, or saw it off, at the lumber
pile, and that there was a plank extending too far
towards the railroad, and that he, the witness, after-
wards chopped it off. Hill, at the time of the accident,
was in the employ of appellants as a section hand on
the part of the road where the switch was located. He
shared with others the duty of caring for appellant's
track. The twenty-first cause for a new trial is, that
the court erred in permitting James Hedge to testify
that he, the witness, met Frank Carr, the conductor
who had charge of the train in which appellee was in-
jured, in the evening after the accident happened to
appellee, and he said to the witness: "We killed a nig-
ger down there this evening. You go move that lum-
ber back in the morning right away;" and also said to
the witness that the lumber was too near the track;
and that the court erred in permitting the witness to
testify that he went the next morning and straight-
ened up the lumber the best he could.

The objection to proof of these statements of the
engineer and conductor is that they took place after
the accident at a different place, were not *res gestae,*

were hearsay, and that these agents were not author-iezd to make such statements by the receivers.

This testimony was offered, as stated at the time, and admitted by the court, for the sole purpose of proving notice of the location of the lumber to the defendants, and not for the purpose of proving negligence.

The court, in further emphazing this fact in its instructions, informed the jury that such testimony was not to be considered as sustaining the charge of negligence on the part of the defendants, but was competent only for the purpose of tending to show knowl-edge on the part of appellants of the condition of the track and obstructions to it, if any, at the time of the occurrence.

The decisions upon this class of evidence are not uniform, some holding that the declarations of an agent or employe after the transaction are not admissible for any purpose. It has been held, however, in a number of cases, that, under certain conditions, the statements of agents and officers may be introduced in evidence against the principal, not for the purpose of showing negligence, but only for the purpose of showing, or tending to show knowledge.

In *Chapman* v. *Erie Railway Co.*, 55 N. Y. 584, and the *Huntington, etc., R. R. Co.* v. *Decker*, 82 Pa. St. 119, it is held that the declaration of an agent made at the time of a particular transaction, while acting within the scope of his duties, may be given in evidence against his principal. Otherwise, if made after the transaction is fully completed and ended.

In *St. Louis, etc., R. W. Co.* v. *Weaver*, 35 Kas. 412, 11 Pac. 408, the court held that where the chief civil engineer, having charge of the construction and repairs of a railroad, and the division roadmaster having charge of a division of a road, for the purpose of keep-

ing it in condition, had a conversation prior to the occurrence of the accident on account of which the action was instituted, with regard to the condition of the improvements of a particular portion of the road within that division, the declaration of the chief civil engineer made in such connection may be given in evidence as against the railroad company for the purpose of showing that the railroad had notice of the dangerous condition of a particular portion of the road within that division. The injuries complained of were caused by the alleged incapacity of a passageway for water, and the court permitted the plaintiff to introduce evidence to prove that the defendant, after the accident, enlarged the capacity of such waterway. The court held that this evidence did not of itself prove negligence, nor that the defendant had notice of the insufficiency of the waterway prior to the accident, nor that it might have had such notice by the exercise of reasonable diligence, nor that it did not exercise such diligence, but at most it only tended to prove, by way of admission on the part of the defendant, that the waterway was originally too small, and the introduction of such evidence for that purpose was not erroneous.

In *McDermott* v. *Hannibal, etc., R. W. Co.*, 87 Mo. 285, it was held that the declaration of the roadmaster, who has authority to employ and discharge the section foreman, that the latter was not a good railroad man, is not admissible to prove the fact that the section foreman was incompetent, but is admissible to prove that the company had notice of his incompetency, if such incompetency is established by other evidence, or there was other evidence tending to establish it, and, such declarations being admitted, its effect should be so controlled by an instruction.

In *City of Delphi* v. *Lowery, Admr.*, 74 Ind. 520, which

was an action against the city by the representative of a person whose death was alleged to have been caused by the negligence of the defendant, it was held competent for the purpose of showing that a municipal corporation had notice of a dangerous place within or near the limits of one of its city streets that other persons had been previously injured at that place. The court, by Elliott, J., says that, "as it tended to prove this fact, it was admissible; and, if appellants had desired to guard against its improper application by the jury, they should have asked an instruction limiting it to its legitimate purpose."

In *City of Lafayette* v. *Weaver*, 92 Ind. 477, which was a suit against a city for an injury caused by a defective sidewalk, the trial court admitted the record of the proceedings of the council after the accident, showing an order to the engineer to examine the defective walk, and report a remedy. The Supreme Court, speaking by Black, commissioner, said: "This was not admissible to prove negligence on the part of the city, the question as to which was to be determined by what was known before and at the time of the accident. * * * But it was proof of the city's recognition of the defect in the sidewalk as one which the city was bound to repair, and was admissible for such purpose, though the city's obligation to keep that place in good condition were sufficiently shown by other evidence. By proper request, the appellant could, through an instruction, cause the restriction of the evidence to its legitimate effect." Citing *Dougan* v. *Champlain, etc., Co.*, 56 N. Y. 1; *Sewall* v. *City of Cohoes*, 11 Hun. 626; *City of Huntington* v. *Mendenhall*, 73 Ind. 460; *City of Delphi* v. *Lowery, supra.*

"Neither the declarations nor admissions of an agent, made after the event to which they refer has

transpired, can be received as evidence to bind his principal, unless they are so immediately connected therewith as to become a part of the *res gestae.*" The statements testified and excepted to were no part of the transaction. *Pittsburgh, etc., R. R. Co.* v. *Theobald,* 51 Ind. 246.

In *LaRose* v. *Logansport National Bank,* 102 Ind. 346, the Supreme Court says: "Conceding that it was competent to prove the fact that the cashier was in the habit of becoming intoxicated, to the neglect of his duties, and that it was competent to prove that the officers of the bank had knowledge of the fact, it was not competent to prove it by introducing in evidence admissions made by an officer or agent of the bank after the fact occurred."

"A declaration of an agent which is a combination of an opinion and a narrative of a past event cannot be part of the *res gestae.*" *Ohio, etc., R. W. Co.* v. *Stein,* 133 Ind. 243.

In the case at bar, the statements testified and objected to were made at a different time and place from the occurrence of the accident.

A collection of decisions upon this question will be found in Repalje & Mack's Digest of Railway Law, vol. 5, pages 460 and 463, to which reference is made.

We do not deem it necessary to prolong this opinion with further citations. In harmony with the weight of the authorities, we believe the statements made by the conductor and engineer were improperly admitted. The admission of improper testimony is presumed to be prejudicial to the party over whose objections said testimony is admitted; yet, if the facts sought to be proven by such improper evidence are clearly established by other uncontradicted testimony, such error will be held to be harmless. There was abundant evidence, uncontradicted, to the effect that

the lumber had been at the place of the accident about two weeks; that a portion of it was irregularly and unevenly piled; that some of the planks projected toward the railroad far enough to be touched by a passing box car; the length of time the lumber had been piled there, its condition, its proximity to the railroad track, the frequent passage of trains, were sufficient to justify the jury in concluding that appellant had knowledge of the location and condition of the lumber with reference to its tracks, omitting the improper testimony of these witnesses to which appellant objected.

The twenty-second reason for a new trial is that the court erred in permitting the witness, Fred Shaffer, to testify that some seven days before the accident, the witness, while standing on the track below and near the lumber pile, saw some cars go by the lumber pile, and saw a car struck by the lumber pile, and a plank drop or fall out of the pile.

The evidence for appellee shows that he was not in the vicinity of the lumber pile for several months prior to the accident, and did not know anything of the pile of lumber when he went to work, and when he was injured. It was proper for him to bring knowledge of the condition of the pile to appellants. To do this, he had the right to prove that the lumber pile near the switch where he was injured was in about the same condition a short time before and after the accident, as tending to show the condition at the time of the accident. Another witness testified to the condition of the pile the next morning after the accident. The effect of this evidence was to show that it was in about the same condition before and after the plaintiff received the injury. Shaffer's evidence was proper to show the condition of the lumber prior to the accident with reference to the railroad track, also that boards

had been struck by passing cars, as tending to show knowledge of appellants. Its weight was for the jury.

The next and last assignment of error discussed is the overruling of the demurrer to the complaint. Substantially the same arguments are used as in support of the first cause for a new trial. Appellants contend that the averment "that as the car was being hauled he stepped to the door on the side of the car, and when in that position the sliding door on the side of the car was caught by the said projecting board, and was suddenly and with great force closed; that as said door closed it struck plaintiff on the side of the head and body, jamming him hard against the door, and holding him there," etc, shows contributory negligence upon the part of appellee, which is not cured by the general averment of freedom from fault.

What we have already said sufficiently indicates the opinion of the court upon the question of contributory negligence on the part of the appellee, and upon the sufficiency of the complaint.

We find no error for which the judgment of the court below should be reversed. Judgment affirmed.