- [No. 8087.]

FIRST NATIONAL BANK OF PHILLIPSBURG V. CLARK'S ESTATE.

1. EVIDENCE—*Admissibility.* Action upon a promissory note of one Nelson to plaintiff, subscribed by defendant as surety. An agreement of facts stated that Nelson had been adjudged a bankrupt, and that certain mortgages executed by Nelson to plaintiff, were, in the bankruptcy proceedings, declared illegal and void, and stipulated that the facts agreed upon might be explained or extended, as to their effect, by other testimony, not contrary to the admitted facts. *Held,* that any testimony which would establish the facts in issue and determined in the bankruptcy court, in the proceeding in which the judgment admitted was rendered, was admissible, within the stipulation, *e. g.,* the Findings of Facts, Statement of the Case, and the Opinion of the Court. (458, 459.)

2. PRINCIPAL AND SURETY—*Illegality in the Transaction Between the Creditor and Principal Debtor,* which is unknown to the surety, discharges the surety. (459, 460.)

And the surety's ignorance of such illegality is presumed, in the absence of evidence to the contrary. (459.)

The purpose of the creditor, in the transaction, being to secure an illegal preference, by obtaining security for an unsecured debt of an insolvent debtor, contrary to the bankruptcy act, and this being unknown to the surety, it was *held* that his knowledge that a chattel mortgage, securing the note in which he became surety, was not recorded, had not the effect to deprive him of the defense. (460.)

*Error to El Paso County Court.* HON. JOHN E. LITTLE, Judge.

Mr. R. FRANK STINSON, and Mr. R. L. CHAMBERS, for plaintiff in error.

Messrs. SPURGEON & CASSIDY, Messrs. HAMILTON & HAMILTON, and Mr. BARNWELL S. STUART, for defendant in error.

Plaintiff in error filed a claim against the estate of Clark, deceased, which was founded upon a note in the sum of $3,000, signed by Clark as surety. The parties stipulated the following facts: Plaintiff in error is a banking corporation engaged in the business of banking at Phillips-

burg, Kansas, and has been since 1890; that James & Company owned a drug store in Phillipsburg, and on August 21st, 1907, were indebted to the bank in the sum of $6,650; that Nelson was a member of this firm, and arranged to buy his partner's interest in the drug store, which was to be accomplished by paying the firm's debts, including the $6,650, and his partner the sum of $9,000; that on that date Nelson executed and delivered to the bank notes aggregating $15,650, which included the amount the firm was indebted to the bank. The notes so executed were in sums and secured as follows: $6,000 secured by mortgage on real property; $1,250 secured by mortgage on real estate; $2,400 secured by real estate mortgage; two notes for $3,000 each, one of which was signed by Clark as surety. The two notes for $3,000 were secured by a chattel mortgage on the stock in trade and fixtures in the drug store of Nelson, executed contemporaneously with the notes. The notes for $1,250 and $2,400 were also secured by this mortgage. The mortgaged property was of sufficient value to pay all of the notes. The chattel mortgage was not recorded until October 26th, following the date of its execution. At the time the bank took the note for $3,000 from Nelson, which Clark afterwards signed, it was agreed between the bank and Nelson that Clark should sign it as surety. On the 9th day of December, 1907, an involuntary petition in bankruptcy was filed against Nelson, who was subsequently adjudged a bankrupt. In these proceedings the mortgages given by Nelson to the bank were declared illegal and void, and set aside and held for naught, as appears by the order of the referee in bankruptcy, and the judgment of the court confirming it. They also stipulated that the deposition of Clark, taken in these proceedings, could be introduced in evidence. It was introduced, and it thereby appears he stated in substance that when Nelson presented the note to him, he refused to sign it, but on being assured by Nelson

that he would not lose anything, placed his name on the note. At this time he was told by Nelson that the bank was satisfied with the security, but did not state whether it was real estate or chattels. A witness for claimant who was present at this time testified, that Nelson told Clark the note was secured by the chattel mortgage mentioned, which could not be recorded, and that was the reason the bank wanted additional security. The parties further stipulated that their substantial rights were governed and controlled by the laws of the state of Kansas, and introduced statutes and decisions of the supreme court of that state, from which it appears that the chattel mortgage was invalid as to the general creditors of the mortgagor.

Over the objection of the bank the report of the referee, his findings of fact and order thereon, and the opinion of the court were introduced in evidence, from which the following appears: That on August 21, 1907, Nelson and his firm were indebted to the bank in the sum of $6,500 which was unsecured; that this indebtedness was evidenced by demand notes, which had been outstanding for a year or more; that at this time Nelson was insolvent, and had been for a long time; that this fact was known to the bank; that the chattels mortgaged, except some furniture and fixtures, consisted of a stock of goods kept for sale by Nelson, and after the execution of the mortgage, he remained in the possession of, and sold the merchandise in the usual course of business, replenishing the stock from time to time, without rendering an account of the proceeds to any one; that the purpose of the bank in loaning Nelson the additional sum of $9,000 and taking the mortgages and notes, to which we have referred, was to secure the unsecured notes of James & Company and Nelson; that the mortgages given covered substantially all of the property of Nelson, and that Nelson executed them with intent to prefer the bank over his other creditors,

and that as these mortgages had been taken within four months preceding the initiation of the bankruptcy proceedings against Nelson, they were invalid as an illegal preference under the Bankruptcy Act. The chattel mortgage on the stock was also declared invalid, because not recorded; and, for the further reason, that Nelson was permitted to remain in possession and sell in the usual course of business without accounting for the proceeds.

The parties also stipulated that pertinent facts in the case not agreed upon might be proven by either party, and facts agreed upon, might be explained or extended as to their effect, by other testimony not contradictory to the stipulated facts.

The claim of the bank was disallowed and it brings the case here for review on error.

GABBERT, C. J., delivered the opinion of the court.

The parties stipulated that the judgment in the bankruptcy proceedings should be received in evidence. They also stipulated that facts agreed upon could be explained or extended in their effect by other testimony not contradictory to those stipulated, consequently evidence falling within this stipulation was admissible. The evident purpose of introducing the judgment was to prove that the chattel mortgage had been declared invalid. Under the stipulation, testimony which would establish what facts and issues were determined in the proceedings in which that judgment was rendered, was therefore, admissible, for the reason that it would explain the effect of such judgment. For this purpose the findings of fact, statement of the case and the opinion of the court were competent. *Russell v. Place*, 94 U. S. 606, 24 L. Ed. 214; 1st Freeman on Judgments, sec. 273; 23 Cyc., page 1538; *Washington Gas Co. v. District of Columbia*, 161 U. S. 316, 40 L. Ed. 712, 16 Sup. Ct. 564; *Hood v. Hood*, 110 Mass. 463. In other words, it having been stipulated that the judgment in question should be received

in evidence, and that testimony which did not contradict that agreed upon, but extended or explained it could be introduced, it was competent to show in the manner indicated what facts were thereby determined, and by so doing the situation is the same as though the judgment, introduced by stipulation of parties, had recited the precise ground upon which it was based, and to this extent it was proof of such facts.

From the facts there can be no question but that the purpose of the bank in loaning Nelson the $9,000, and taking the securities it did, was to obtain security for the unsecured indebtedness of James & Company and Nelson. Nelson was then insolvent, and known to the bank to be in that financial condition, and the purpose of the bank was to obtain a preference over other creditors of Nelson for an unsecured indebtedness. This the Bankruptcy Act inhibits. It is not claimed that Clark knew Nelson was insolvent, or that an illegal preference was the object of the transaction, and in the absence of testimony to the contrary, its nature was such that it will be presumed he did not have such knowledge. The agreement of a surety is not binding where the transaction between the primary parties, out of which the agreement of the surety arises, is contaminated by positive illegalities of which he is ignorant. *Denison v. Gibson,* 24 Mich. 187.

Counsel for the bank urge that Clark knew the chattel mortgage was not to be recorded, and hence had knowledge of its invalidity as against general creditors. It is also urged that even if it had been recorded, it would have been fraudulent as to such creditors, and therefore Clark was not deprived of any security to which he could have resorted had he discharged his obligation. This does not furnish the test by which to determine whether Clark was released. It was the illegality of the transaction between Nelson and the bank that released Clark.

In the circumstances of this case any other rule would be unjust. In signing the note it must be presumed that Clark acted on the belief that the transaction between the bank and Nelson was one occurring in the usual course of business of that description, which only subjected him to the ordinary risk attending it. The bank must be presumed to have known that such was his understanding, and that he acted on that belief, unless he was informed there were extraordinary circumstances which increased his risk. When Clark signed the note, Nelson was insolvent. The bank knew this to be the fact. The object of the bank in making the additional loan was to secure an illegal preference by obtaining security for unsecured indebtedness. So that the transaction between Nelson and the bank was not one occurring in the usual course of business, in that for an ulterior and illegal object, the bank made a loan to an insolvent debtor, whom it knew was in that financial condition. Clark was ignorant of these conditions. The transaction, upon its face, appeared to be the usual one of a bank making a loan, and by becoming surety on the note he would naturally believe he only assumed the ordinary risk attending that character of transaction between the principal parties. It was not of the character he supposed, and hence, in the circumstances of this case, his risk was materially increased above what he would expect it to be, consequently the failure of the bank to advise him of the facts relating to the transaction was a legal fraud, which released him from his contract, because he was thereby misled regarding the risk he assumed by signing the note.

It is also certain that had Clark been advised of the nature of the transaction he would not have signed as surety, and the failure of the bank to acquaint him with the facts relating to it was a fraud which released him from his obligation on the note. 1st Brandt on Suretyship (3rd Ed.), Sec. 474; *Pidcock v. Bishop*, 10 E. C. L. 276; *Franklin Bank v. Cooper*, 36 Maine 179; *Fassnacht v. Emsing Gagen Co.*,

18 Ind. App. 80, 46 N. E. 45, 47 N. E. 480, 63 Am. St. Rep. 322, 18 Ind. App. 80; *Doughty v. Savage,* 28 Conn. 146; *Powers Dry Goods Co. v. Harlin,* 68 Minn. 193, 71 N. W. 16, 64 Am. St. 460, 32 Cyc. 62.

The judgment of the County Court is affirmed.

*Judgment affirmed.*

HILL J., and SCOTT, J., concur.