Mike A. WEINIG, Appellant–Respondent,

v.

Dana L. WEINIG, Appellee–Petitioner.

No. 46A03–9510–CV–357.

Court of Appeals of Indiana.

Dec. 20, 1996.

Tom A. Black, Plymouth, for Appellant–Respondent.

Craig V. Braje, Michelle A. Blackwell, Braje & Nelson, Michigan City, for Appellee–Petitioner.

## OPINION

STATON, Judge.

Mike A. Weinig ("Michael") appeals the trial court's distribution of marital property in its judgment dissolving his marriage with Dana L. Weinig ("Dana"). Michael presents three issues on appeal, which we restate:

I. Whether the trial court erred in ruling that lottery proceeds in the marital estate were earned income resulting from a partnership and not a gift from Michael's mother.

II. Whether Dana should be equitably estopped from receiving any of the lottery money due to her verbal representations that she would make no claim to the money in the event of a divorce.

III. Whether the trial court's division of 60% of the lottery proceeds to Michael and 40% of the lottery proceeds to Dana is unjust and unreasonable.

We affirm.

The facts and inferences most favorable to the judgment are that Michael and Dana married on August 14, 1993. Some time prior to the marriage, Michael, his mother, and his four siblings, orally agreed that they would all play the lottery and that if any one of them should purchase a lottery ticket which would win a substantial prize, all of them would share the money equally. The sole winning ticket for the Saturday, August 27, 1994, six million dollar Hoosier Lottery prize was purchased by Michael's mother. She informed the lottery commission that, per the family agreement, a six person partnership had won the prize. Each of the six family members took an equal one sixth share of the lottery proceeds. Michael reported the income as earned income for tax purposes, and no gift tax was paid. After discovering that she possessed the winning ticket, and before disbursement of the funds by the lottery commission, Michael's mother demanded that Dana sign a post-nuptial

agreement stating that she would make no claim to the lottery proceeds in the event of a divorce. Dana assented, stating that she would sign such an agreement as soon as it could be prepared. Michael and Michael's attorney suggested that Dana seek independent legal counsel before executing a post-nuptial agreement. After disbursement of the money by the Lottery Commission, and after Michael had received his one sixth share, Dana consulted with an attorney. Following her consultation with an attorney, Dana recanted her earlier statements and refused to sign a post-nuptial agreement. No post-nuptial agreement was ever executed. On or about October 16, 1994, Michael and Dana separated, and Dana filed for dissolution of the marriage on October 20, 1994.

## I.

### Partnership

The first issue is whether the trial court erred in ruling that the lottery proceeds were earned income resulting from a partnership and not a gift from Michael's mother. Michael and Dana both agree that the lottery proceeds are marital property subject to distribution by the trial court. They disagree only on the proper distribution under our statutory guidelines. IND. CODE § 31–1–11.5-11 sets forth legislative guides for division of marital property in a dissolution of marriage, providing in relevant part:

(c) The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

 \* \* \* \* \* \*

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

The trial court ruled that Michael received a one sixth share of the lottery proceeds not as a gift from his mother, but as a result of his participation in a partnership with his family members to play the lottery. Michael assigns this finding, and the resultant failure of the trial court to deviate from an equal division of property by assigning all of the lottery proceeds to him as a gift· from his mother, as error.

Michael contends that there is insufficient evidence to support the trial court's finding that he received the lottery proceeds as the result of a partnership instead of as a gift. Rather, Michael argues that the oral agreement amounted to nothing more than a promise to make a gift in the future, which was unsupported by consideration, and so unenforceable.

■■■ Existence of a partnership is generally a question of fact. *Soley v. VanKeppel,* 656 N.E.2d 508, 513 (Ind.Ct.App.1995), *J.M. Schultz Seed Company v. Robertson,* 451 N.E.2d 62, 64 (Ind.Ct.App.1983), *In re Zeits,* 108 Ind.App. 617, 31 N.E.2d 209, 216 (1941). The standard for reviewing the sufficiency of evidence establishing a partnership is well settled:

In reviewing the evidence to determine its sufficiency, we may only look to that evidence and the reasonable inferences to be drawn therefrom most favorable to the appellee. *Butler v. Forker* (1966), 139 Ind. App. 602, 221 N.E.2d 570. This Court will neither weigh the evidence nor judge the credibility of the witnesses. *Butler, supra.* It is the province of the trial court to determine which witness to believe when it hears the evidence. *Jackman v. Jackman* (1973), 156 Ind.App. 27, 294 N.E.2d 620, 625. We cannot reverse upon the basis of conflicting evidence. *Franks v. Franks* (1975), 163 Ind.App. 346, 323 N.E.2d 678, 680. In order to reverse the finding of the trial court, the evidence must lead solely to a conclusion which is contrary to that reached by the lower court. *Butler, supra; Puzich [v. Pappas* (1974), 161 Ind. App. 191, 314 N.E.2d 795], *supra.*

*Endsley v. Game–Show Placements, Ltd.,* 401 N.E.2d 768, 771 (Ind.Ct.App.1980); *Vohland v. Sweet,* 433 N.E.2d 860, 865 (Ind.Ct. App.1982), *reh. denied; J.M. Schultz Seed Company, supra* at 65.

■■■ "The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their com-

mon benefit, each contributing property or services, and having a community of interest in the profits." *Kopka v. Yockey,* 76 Ind. App. 218, 131 N.E. 828, 829 (1921). To establish a partnership relation between parties, there must be: (1) a voluntary contract of association for the purpose of sharing profits and losses which may arise from the use of capital, labor, or skill in a common enterprise; and (2) an intention on the part of the parties to form a partnership. *Watson v. Watson,* 231 Ind. 385, 108 N.E.2d 893, 895 (1952); *Isaacs v. Fletcher American National Bank,* 103 Ind.App. 246, 198 N.E. 829, 832 (1935), *reh. denied,* 103 Ind.App. 246, 200 N.E. 440 (1936). Further:

> [I]t must be borne in mind ... that the intent, the existence of which is deemed essential, is an intent to do those things which constitute a partnership. Hence, if such an intent exists, the parties will be partners, notwithstanding that they proposed to avoid the liability attaching to partners ... It is the substance, and not the name, of the arrangement between them which determines their legal relation toward each other, and if, from a consideration of all the facts and circumstances, it appears that the parties intended, between themselves, that there should be a community of interests of both the property and profits of a common business or venture, the law treats it as their intention to become partners, in the absence of other controlling facts.

*Driscoll v. Sullivan,* 186 Ind. 178, 115 N.E. 331, 332–333 (1917) (citations omitted).

■ Finally, "[t]he intention which controls in determining the existence of a relation is the legal intention deducible from the acts of the parties." *Kamm & Schellinger Co. v. Likes,* 93 Ind.App. 598, 179 N.E. 23, 25 (1931). The intention to form a partnership must be determined by examining all the facts of the case, and the conduct of the parties reveals their true intentions and the construction they placed upon their own agreement. *Breinig v. Sparrow,* 39 Ind.App. 455, 80 N.E. 37, 38–39 (1907). "This conduct is an exposition of the contract by the parties themselves, and they best knew what their intention was, and what they believed their

contract to mean." *Albright v. Hughes,* 107 Ind.App. 651, 26 N.E.2d 576, 580 (1940) (citations omitted).

■ The first requirement for establishing a partnership, that there be a voluntary contract of association for the purpose of sharing profits which may arise from use of capital, labor, or skill in a common venture, is established by the family's oral agreement. The six family members agreed that they would continue to play the lottery, and would evenly divide any major winnings. The agreement is a voluntary joining together to share winnings that may result from expenditures of money on lottery tickets. The agreement to share any large winnings created a community of interest in any large lottery prize among all six parties to the agreement. The trial court could reasonably conclude that the family's oral agreement to evenly divide any major lottery winnings was a voluntary contract of association for the purpose of sharing profits arising from expenditures on lottery tickets, satisfying the first element essential to finding a partnership.

The second element essential to establishing a partnership, that there be an intention on the part of the parties to form a partnership, was established by the parties conduct subsequent to forming the oral agreement. There was evidence from which the trial court could conclude that Michael continued to play the lottery regularly, along with the other parties to the oral agreement. After Michael's mother discovered that she possessed the winning ticket, the family stated to the Lottery Commission and federal taxing authorities that the Lottery was won by a six person partnership. No gift tax was paid on the lottery proceeds disbursed to Michael since Michael declared the money to be earned income resulting from his one sixth interest in a partnership to play the lottery. Finally, the lottery jackpot was in fact divided equally among all six family members as contemplated by their oral agreement. The trial court could reasonably find that this subsequent conduct of the family members demonstrated an intention to pursue the common goal of winning a lottery jackpot as a partnership, satisfying the second element

essential to establishing a partnership relation among the family members for the purpose of winning the lottery.

The totality of facts is sufficient to support the trial courts finding that the one sixth share of lottery proceeds received by Michael was due to his participation in a family partnership to play the lottery and not as a gift from his mother. No one fact stands alone, but the agreement, considered with the subsequent conduct of the parties, shows that a partnership was intended, that the goal of the partnership was actually achieved, and that upon attainment of their goal the parties fulfilled the obligations they accepted in their oral agreement. The facts of this case reveal a wholly completed partnership. In 1931 Judge Lockyear posited the observation, "Suppose they had been cruising around in a whale boat and had caught a whale. Would they have been partners in the expedition? The question almost answers itself." *Kamm, supra*, at 26. The parties here caught and divided their whale; the evidence of their chase and capture is sufficient to support the trial court's finding that the lottery proceeds came into the marital estate as the result of Michael's participation in a partnership to play the lottery.

## II.

### *Equitable Estoppel*

Michael contends that the trial court erred by failing to find Dana equitably estopped from claiming any lottery proceeds. Invoking the theory of promissory estoppel, Michael seeks to preclude distribution of lottery money to Dana based on Dana's oral statements, made on at least four occasions during the period of time between Michael's mother discovering that she possessed the winning ticket and Michael's receipt of a one sixth share of the money, that in the event of a divorce Dana agreed to relinquish all claim to Michael's share of the lottery money. Michael and Dana disagree as to the exact nature and import of Dana's statements. Michael argues that Dana agreed, then presently, to relinquish all claims to the prize money. Dana contends that she only expressed an intent to do an act in the future; namely, to sign a post-nuptial agreement at some future time. Whether Dana's statements expressed either a present acknowledgment and agreement or an intent to do some act in the future, however, is not determinative. The doctrine of equitable estoppel applies equally to both factual situations.

 "[E]stoppel is a concept grounded in fairness, and a claim of estoppel may properly be considered whenever a party is alleged to have actively participated in the creation of a misperception of fact or mistaken belief of which it then seeks to take unfair advantage." *Premier Investments v. Suites of America, Inc.*, 630 N.E.2d 232, 239 (Ind. Ct.App.1994), *rev'd on other grounds*, 644 N.E.2d 124 (Ind.1994). "[U]se of this doctrine is not limited to circumstances involving an actual or false representation or concealment of an existing material fact." *Levin v. Levin*, 645 N.E.2d 601, 604 (Ind.1994). "Promissory estoppel is an exception to the general rule that estoppel is not available upon promises to be performed in the future.... Whether the promissor's action 'constitutes a misrepresentation of current fact or an unfulfilled promise as to future action is irrelevant to the application of promissory estoppel.'" *Logan, supra*, at 954 (citations omitted). Promissory estoppel is not a species of fraud, and fraud need not be shown to establish a recoverable claim under a promissory estoppel theory, as fraud, either actual or constructive, involves elements of misrepresentation of a past or existing fact, which is irrelevant to the application of promissory estoppel. *Lightle v. Harcourt Management Co., Inc.*, 634 N.E.2d 858, 860 (Ind.Ct.App.1994). "Rather, equitable estoppel is a remedy available if one party through his course of conduct knowingly misleads or induces another party to believe and act upon his conduct in good faith without knowledge of the facts." *Levin, supra*, at 604. The question, therefore, is not whether Dana made a statement as to a presently existing fact or expressed an intent to do an act in the future. Rather, the issue is whether Dana's statements created the sort of reliance that equity will enforce by estoppel.

In turning to an analysis of whether Dana's statements created reliance enforce-

able in equity, we are guided by our Supreme Court's explanation of Indiana's law on equitable estoppel contained in *First Nat. Bank v. Logan Mfg. Co.*, 577 N.E.2d 949 (Ind. 1991). There the court explained:

The Restatement (Second) of Contracts § 90 provides:

A promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

That section has been approved and applied by the Indiana Court of Appeals ... and is today adopted by this Court.

The doctrine of promissory estoppel encompasses the following elements: (1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise ... Thus, a promissor who induces a substantial change of position by the promisee in reliance upon the promise is estopped to deny enforceability of the promise. The reason for the doctrine is to avoid an unjust result in that justice and fair dealing require that one who acts to his detriment on the faith of a promise should be protected by estopping denial of that promise.

The doctrine of estoppel springs from equitable principles and is designed to aid the law in the administration of justice where, without its aid, injustice might result. Its purpose is to preserve rights previously acquired and not to create new ones.... Estoppel is 'the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment'.... Fraud need not be proven; '[i]t is sufficient if the conduct of the party has been knowingly such as would make it unconscionable on his part to deny what his conduct had induced another to believe and act upon in good faith and without knowledge of the facts.'

*Id.* at 954 (citations omitted). Finally, "[o]ne who alleges and relies on the doctrine has the burden to establish all facts necessary to support its application." *Id.* at 955.

The essential element of equitable estoppel dispositive in this case is the question of detrimental reliance. Michael has not shown that he substantially and definitely changed his position as a result of Dana's statements. No evidence was presented at trial that Michael would not have accepted his one sixth interest in the partnership's lottery winnings had Dana not stated that she would waive her rights to lottery winnings in the event of a divorce. Michael has never alleged that he would have relinquished claim to his share of the lottery prize but for Dana's statements. To the contrary, Michael testified that he believed himself entitled to a one sixth share of the lottery prize, by virtue of the family agreement, immediately upon learning that the partnership had acquired a winning ticket. At the heart of equitable estoppel is a change in the promisee's position, a change that the promisee made in reliance on the promissor's statements, resulting in an unjust detriment to the promisee if the promissor is not held to their statement. Here Michael has not made any showing that he would have forgone his share of the lottery prize had Dana not stated that in the event of a divorce she would waive all claims to the lottery proceeds. Michael had the burden of producing evidence at trial to establish this essential element for equitable estoppel. In the absence of such evidence, the trial court properly declined to exercise its equitable power to estop Dana from claiming an interest in the lottery proceeds as part of the property settlement in this dissolution of marriage.

### III.

#### *Property Division*

The final issue raised is whether the trial court's division of 60% of the lottery proceeds to Michael and 40% of the lottery proceeds to Dana is unjust and unreasonable. IND.CODE § 31–1–11.5–11 governs the dispo-

sition of marital assets in a dissolution proceeding. The court shall presume that an equal division of the property between the parties is just and reasonable, absent rebuttal. IND.CODE § 31–1–11.5–11(c). We review the trial court's division of marital property to determine whether the result reached is clearly against the logic and effect of the facts and circumstances before the trial court. *Finch v. Finch,* 592 N.E.2d 1260, 1261 (Ind.Ct.App.1992), *reh. denied.* We will not reweigh the evidence, but consider only the evidence and reasonable inferences drawn therefrom which support the trial court's judgment. *Id.* The trial court's ruling will be disturbed only where there is no rational basis to support it. *Id.*

 Michael asks us to reweigh the evidence. Michael argues that because he and Dana were married for just fourteen months, because Dana moved out of the marital home shortly after receiving the lottery winnings and filed for divorce within two months of receiving the winnings, and because she stated that she would sign a post-nuptial agreement waiving her rights to the lottery proceeds, it is unfair to award her any of the lottery proceeds in the property division. Moreover, Michael contends in his brief on appeal that "the specter of a grand fraudulent" plot by Dana "in scheming and pirating" away the lottery money is present, but he neither argued fraud at trial nor presented evidence to support such a finding. Contradicting the evidence Michael relies on to infer fraud is unrebutted testimony that Dana and Michael had cohabitated for three years preceding their marriage, that during these three years Dana helped raise Michael's two children from a previous relationship, and unrebutted testimony that Dana left the marital home not of her own volition but at Michael's insistence that she move out after she stated that she would not sign a post-nuptial accord. We will not reweigh conflicting evidence. The trial court deviated from an equal division to the extent it did on the basis of Michael's obligation to support his two children from a previous relationship. There is evidence in the record which, along with the reasonable inferences drawn therefrom, is sufficient to provide a rational basis for the trial court's division of marital property. We cannot conclude that the trial court's decision is clearly against the logic and effect of the facts and circumstances presented before it.

Affirmed.

GARRARD and RUCKER, JJ., concur.