**CITIZENS ACTION COALITION OF INDIANA, INC., Office of Utility Consumer Counsel, Central Soya Company, Inc. and General Motors Corporation, Appellants–Statutory Party and Intervenors,**

v.

**INDIANA STATEWIDE ASSOCIATION OF RURAL ELECTRIC COOPERATIVES, INC., et al., Northern Indiana Public Service Company, Indiana Gas Company, Inc., PSI Energy, Inc., Indiana Municipal Electric Association, and Southern Indiana Gas and Electric Company, Appellees–Petitioners and Intervenors.**

No. 93A02–9701–EX–65.

Court of Appeals of Indiana.

March 26, 1998.

---

Kirby Mullen, Michael A. Mullett, Mullett & Associates, Indianapolis, Anne E. Becker, Robert M. Glennon, Timothy L. Stewart, Office of Utility Consumer Counselor, Indianapolis, John F. Wickes, Jr., Todd A. Richardson, Pamela H. Sherwood, Lewis & Kappes, Indianapolis, for Appellants–Statutory Party and Intervenors.

David S. Richey, Rand D. Richey, Parr Richey Obremskey & Morton, Indianapolis, Ronald E. Christian, Robert E. Heidorn, Indiana Gas Company, Inc., Indianapolis, Carrie J. Hightman, Schiff Hardin & Waite, Chicago, Kay E. Pashos, PSI Energy, Inc., Plainfield, Duejean C. Garrett, Baker & Daniels, Indianapolis, for Appellees–Petitioners and Intervenors.

## OPINION

GARRARD, Judge.

### Case Summary

Citizens Action Coalition of Indiana ("CAC"), the Office of Utility Consumer Counselor ("OUCC"),[1] Central Soya Company, and General Motors Corporation (collectively, "Consumers") appeal the denial of their motion to dismiss a petition filed with the Indiana Utility Regulatory Commission ("Commission"). We affirm.

### Issues

Consumers present various issues for our review which we consolidate and restate as follows:

I. Whether Indiana Statewide Association of Rural Electric Cooperatives, Inc. ("Statewide") appropriately requested an adjudication on the merits of its plan rather than an administrative rulemaking;

II. Whether Statewide sufficiently complied with the pleading requirements in the Alternative Utility Regulation Act, Indiana Code Sections 8–1–2.5–1 through –12 (the "Act"); and,

III. Whether the Commission has the authority and jurisdiction to consider and rule upon Statewide's plan.

### Facts and Procedural History

In June of 1996, Statewide filed a petition and a proposed alternative regulatory plan with the Commission for consideration, pursuant to Indiana Code Section 8–1–2.5. Statewide filed an amended petition on August 7, 1996. The following day, the OUCC filed an Ind.Trial Rule 12(B)(6) motion to dismiss Statewide's petition. In its motion, the OUCC alleged that the petition failed to meet certain procedural prerequisites to invoke the jurisdiction of the Commission, and that Statewide sought certain relief which the Commission lacked legal authority to grant. The other three "Consumers" joined in OUCC's motion.

On September 5, 1996, the presiding Commissioner and the Administrative Law Judge

---

1. OUCC is the state agency charged with the statutory duty to represent utility ratepayers.

issued an entry denying the Joint Movants' motion to dismiss. CAC filed an appeal to the full Commission, which was joined by the rest of the appellants. The Commission issued its January 8, 1997 order affirming the previous ruling of the Presiding Commissioner and the Administrative Law Judge. CAC timely filed its praecipe in January of 1997, and its record in March. On April 15, 1997, Statewide filed it second amended petition and an amended alternative regulatory plan with the Commission. On April 28, 1997, Statewide filed with this court a verified motion to dismiss or summarily affirm, alleging that the plan upon which the January 8 order was based had been amended, thus mooting the appeal, and that the order was not final and no interlocutory appeal was pursued. A panel of this court denied Statewide's motion, noted that the Commission had asserted its jurisdiction over the original petition by denying Consumers' motion to dismiss, and instructed Consumers to file opening briefs.

### Discussion and Decision

■ Motions to dismiss for failure to state a claim upon which relief can be granted are disfavored because such motions undermine the policy of deciding claims on their merits. *Hill v. Beghin,* 644 N.E.2d 893, 895 (Ind.Ct.App.1994), *trans. denied.* When we review a ruling on a motion to dismiss, we view the pleadings in a light most favorable to the nonmoving party, and we draw every reasonable inference in favor of that party. *Id.*

■ The parties have not cited, and our independent research has failed to reveal, any cases dealing with the Act or its meaning. Thus, this case presents issues of first impression. When the meaning of a statute is at issue, we follow several rules of statutory construction. *See* IND.CODE § 1–1–4–1(1). We do not and may not interpret a statute that is facially clear and unambiguous. Rather, we give the statute its plain and clear meaning. *Skrzypczak v. State Farm Mut. Auto. Ins.,* 668 N.E.2d 291, 295 (Ind.Ct. App.1996). Additionally, when construing a statute, the legislature's definition of a word binds us. When the legislature has not defined a word, we give the word its common and ordinary meaning. *Id.* In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries. *Ashlin Transp. Servs., Inc. v. Indiana Unemployment Ins. Bd.,* 637 N.E.2d 162, 167 (Ind.Ct.App.1994). If a statute is ambiguous, we seek to ascertain and give effect to the legislature's intent. *Skrzypczak,* 668 N.E.2d at 295. In doing so, we read an Act's sections as a whole and strive to give effect to all of the provisions, *id.,* so that no part is held meaningless if it can be reconciled with the rest of the statute. *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602, 605 (Ind.Ct.App.1996), *trans. denied.* Further, we presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Walling v. Appel Service Co., Inc.,* 641 N.E.2d 647, 651 (Ind.Ct.App.1994).

### I. Adjudication on the Merits

■ Consumers argue that Statewide is not an energy utility as defined by the Act, that Statewide therefore lacks standing, and that Statewide should not be using the adjudicatory process to achieve what Consumers perceive to be rulemaking. We disagree.

The Act defines "energy utility" as: "a public utility or a municipally owned utility within the meaning of IC 8–1–2–1, or a local district corporation or a general district corporation within the meaning of IC 8–1–13–23, engaged in the production, transmission, delivery, or furnishing of heat, light, or power." IND.CODE § 8–1–2.5–2. Indiana Code Section 8–1–13–23(a) provides: "a general district corporation is a corporation formed under this chapter for the purpose of furnishing services to local district corporations." The record indicates that Statewide is such a general district corporation, and thus falls within the definition of energy utility. Moreover, each REMC represented by Statewide undoubtedly falls under the definition of energy utility and could individually attempt to do what Statewide is attempting to do on behalf of the individual REMCs. That some of the REMCs wish to save resources and join one petition does not negate Statewide's

status as an energy utility with standing in this matter.

■ As for the contention that Statewide is improperly attempting an adjudication when it should be utilizing a rulemaking procedure, we are likewise unpersuaded. Only the REMCs which have joined Statewide's petition and have elected and resolved to be regulated pursuant to Statewide's plan would be affected by it. Other utilities could continue to be regulated in the traditional manner or could file their own petitions and accompanying plans. In contrast, if a rule were promulgated, all utilities would be subject to it. The present petition is properly brought in the adjudication setting.

## II. Pleading Requirements

■ Consumers also argue that Statewide's petition did not meet the "verified" requirement of the Act. Indiana Code Section 8–1–2.5–4 provides: "Section 5 or 6, or both, of this chapter do not apply to an energy utility unless the energy utility voluntarily submits a verified petition to the commission stating the energy utility's election to become subject to such section or sections." This section does not set out the specifics of verification. That is, it fails to require that verification be done in a certain manner or by a certain person, or that it be attached to the petition.

Statewide submitted the following as verification:

The undersigned Michael H. Core is Chief Executive Officer of [Statewide] and knows of my own personal knowledge and affirms under the penalties of perjury that each of the distribution electric cooperatives joining with Statewide as Petitioners in the above captioned cause have reviewed the above and foregoing Petition and proposed Alternative Regulatory Plan and have resolved to join in and petition for approval and implementation of this Plan and have elected to become subject to such regulation under such Plan subject to their rights under I.C. § 8–1–13–18.5, and that the facts stated in said petition are true to my best information and belief.

(signature)

Michael H. Core

Record at 156. Consumers did not dispute the veracity of the above statement or the authenticity of Core's signature. In accepting Statewide's verification, the Commission noted that Statewide had "substantially complied with the portion of IC 8–1–2.5–4 which requires that a petition be verified, by filing an affidavit in their response to the Motion to Dismiss, which, in conjunction with the election expressed in paragraph ten of their Amended Petition, satisfied the verification requirement of I.C. 8–1–2.5–4." Record at 350. Paragraph ten of Statewide's amended petition provides, *inter alia:*

Under I.C. 8–1–2.5–1, et seq., each of the Petitioning Distribution REMCs could request the Commission to adopt a different form of alternative regulatory plan for its regulation. However, in the interest of uniformity and administrative efficiency Petitioners have together developed an Alternative Regulatory Plan for application to each of the Petitioning Distribution REMCs which includes declination of the Commission's jurisdiction uniformly over them in part (the "Plan").

Record at 82. In view of the circumstances presented in this case and the Commission's discretion in interpreting the Act, we will not overturn the Commission's decision on this ground.

## III. Commission's Authority and Jurisdiction

■ Consumers spend the majority of their briefs arguing that the relief sought by Statewide falls outside the lawful scope of the Commission's authority and jurisdiction. In particular, they argue that the plan improperly:

a. establishes a conclusive presumption that a utility's proposed rates or rate changes are "just and reasonable" without either a Commission investigation or an opportunity for the utility's customers to be heard on the matter;

b. shifts the ultimate burden of persuasion from a utility seeking an increase in its existing rates and charges to the customers who would be required to pay the increased rates and charges;

c. changes the standing requirements necessary to invoke its jurisdiction to investigate complaints of rates that are unjust, unreasonable, or discriminatory or service that is unsafe, unreasonable, discriminatory, or inadequate;

d. denies utility customers refunds of rates and charges put into effect and collected pursuant to a utility filing with the Commission but which are subsequently determined to be excessive as a result of either a Commission investigation and order, or an appeal pursuant to Indiana Code Sections 8–1–3–1 through –11;

e. limits the statutory authority, powers and duties of the OUCC pursuant to Indiana Code Sections 8–1–1.1–1 through –9.1 and restricts the discretion of the incumbent Consumer Counselor in the performance of those powers and duties;

f. frustrates the role of regulation in simulating competitive conditions; and,

g. undermines the statutory and constitutional protections of judicial review.

It is well-settled that an administrative agency has the inherent authority in its broad grant of power from the legislature to regulate that which is necessary to effectuate the regulatory scheme outlined in the relevant statute. *Northern Ind. Public Serv. Co. v. Citizens Action Coalition of Ind.,* 548 N.E.2d 153, 158 (Ind.1989). Consequently, where the legislature has expressly authorized an agency to grant a certain form of relief, the agency has the inherent authority to resolve the issues attendant to exercising that authority.

In addressing the issue of the Commission's authority and jurisdiction, we are again guided by the Act's language, which we examine in detail. In the first section of the Act, our legislature declared the following:

(1) That the provision of safe, adequate, efficient, and economical retail energy service is a continuing goal of the commission in the exercise of its jurisdiction.

(2) That competition is increasing in the provision of energy services in Indiana and the United States.

(3) That traditional commission regulatory policies and practices, and certain existing statutes are not adequately designed to deal with an increasingly competitive environment for energy services and that alternatives to traditional regulatory policies and practices may be less costly.

(4) That an environment in which Indiana consumers will have available state-of-the-art energy services at economical and reasonable costs will be furthered by flexibility in the regulation of energy services.

(5) That flexibility in the regulation of energy services providers is essential to the well-being of the state, its economy, and its citizens.

(6) That the public interest requires the commission to be authorized to issue orders and to formulate and adopt rules and policies that will permit the commission in the exercise of its expertise to flexibly regulate and control the provision of energy services to the public in an increasingly competitive environment, giving due regard to the interests of consumers and the public, and to the continued availability of safe, adequate, efficient, and economical service.

IND.CODE § 8–1–2.5–1. In recognition of those declarations, the legislature now permits an energy utility to request that the Commission "enter an order, after notice and hearing, that the public interest requires the commission to commence an orderly process to decline to exercise, in whole or in part, its jurisdiction over" the energy utility. IND. CODE § 8–1–2.5–5(a). In approving retail energy services or establishing just and reasonable rates and charges for an energy utility electing to be subject to this Act, the Commission may:

(1) Adopt alternative regulatory practices, procedures, and mechanisms, and establish rates and charges that:

(A) are in the public interest as determined by consideration of the factors [set out in Ind.Code § 8–1–2.5–5]; and

(B) enhance or maintain the value of the energy utility's retail energy services or property; including practices, procedures, and mechanisms focusing on the price, quality, reliability, and efficiency

of the service provided by the energy utility.

IND.CODE § 8–1–2.5–6(a).

Specifically, the procedure works as follows. "An energy utility electing to become subject to this section shall file with the commission an alternative regulatory plan proposing how the commission will approve retail energy services or just and reasonable rates and charges for the energy utility's retail energy service." IND.CODE § 8–1–2.5–6(c). After notice and hearing, the Commission may approve, reject, or modify the energy utility's proposed plan if it finds that such action is consistent with the public interest. IND.CODE § 8–1–2.5–6(e). In determining whether the public interest will be served, the commission "shall" consider the following:

(1) Whether technological or operating conditions, competitive forces, or the extent of regulation by other state or federal regulatory bodies render the exercise, in whole or in part, of jurisdiction by the commission unnecessary or wasteful.

(2) Whether the commission's declining to exercise, in whole or in part, its jurisdiction will be beneficial for the energy utility, the energy utility's customers, or the state.

(3) Whether the commission's declining to exercise, in whole or in part, its jurisdiction will promote energy utility efficiency.

(4) Whether the exercise of commission jurisdiction inhibits an energy utility from competing with other providers of functionally similar energy services or equipment.

IND.CODE § 8–1–2.5–5(b).

■ Upon approving a plan, the Commission does not lose its power in the matter. If, after observing how the plan is functioning, the Commission begins to reconsider the wisdom of its original decision to approve the plan, action can be taken. The Commission may terminate an alternative regulatory plan sua sponte or at the request of the OUCC, an affected energy utility, or a proper class. To do so, the Commission enters:

... an order notifying the energy utility subject to the alternative regulatory plan or over which jurisdiction was either limited or not exercised under this chapter that the commission will proceed to terminate the plan, or any part thereof, or exercise jurisdiction over the energy utility or its retail energy service to the extent the public interest requires, unless a formal request for a hearing is filed by the energy utility with the commission not more than fifteen (15) days after the date of the order.

IND.CODE § 8–1–2.5–7. Further, the Commission is not the only entity overseeing the energy utility industry. The Act requires that the regulatory flexibility committee monitor changes and competition in the energy utility industry. IND.CODE § 8–1–2.5–9. The committee must review the Commission's annual report on energy utility industry competition and issue a report and recommendations to the legislative council regarding certain issues. *See id.*

As is apparent from the extensive language cited above, the Act vests in the Commission wide authority to decide to what degree to exercise its jurisdiction over energy utilities. *See* IND.CODE §§ 8–1–2.5–5(a), –6(a), –6(e). However, in doing so, the Commission must consider the public interest. IND.CODE § 8–1–2.5–6(e). In particular, the Commission must weigh specific factors. *See* IND.CODE §§ 8–1–2.5–5(b), –6(a)(1)(B). Although not mandated to do so when making decisions regarding alternative regulatory plans, the Commission presumably also factors in the substance of the declarations set out in Indiana Code Section 8–1–2.5–1.

To the extent that Statewide's first plan contains conclusive presumptions, shifts burdens, changes standing requirements, denies refunds, etc., Statewide has indicated a willingness to modify its plan. *See* Statewide's Verified Motion to Dismiss or Summarily Affirm.[2] In response to the assertion that the plan theoretically limits OUCC's power, the OUCC is free to make that argument, perhaps at a hearing, to the Commission

---

**2.** Indeed, Statewide's submission of its first amended plan makes substantial changes in re-

sponse to Consumers' concerns.

during extensive examination of the plan. Further, if the plan is approved in a modified form, and upon implementation does actually inappropriately limit the OUCC's power, the OUCC can request that the plan be modified, terminated, etc. *See* IND.CODE § 8–1–2.5–7.

As for the contention that Statewide's plan departs from Indiana's traditional regulation of utilities, thus frustrating the role of regulation in simulating competitive conditions, we point to the evolution of the utility industry. The changing face of the utility industry led at least in part to the promulgation of the Act. IND.CODE § 8–1–2.5–1. The Act permits utilities to do just what Statewide is doing; propose alternative plans to traditional regulation. Not only does the Act specifically note the developments in the industry, but it requires the Commission to consider the issues such as the extent of competition and how a plan fits into the scheme of regulation. *See* IND.CODE § 8–1–2.5–5(b).

In summary, from our review, the legislature empowered the Commission to consider and rule upon the reasonableness of plans like the one submitted by Statewide. Thus, while we express no opinion concerning the merits of Statewide's plan, we will not reverse the Commission's decision to deny Consumers' motion to dismiss Statewide's petition. If the Commission eventually decides to approve a plan, and Consumers disagree with the Commission's decision, they are then free to appeal the same way any party would appeal an administrative decision.

Affirmed.

STATON and HOFFMAN, JJ., concur.