WABASH GRAIN, INC., Stephen M. Syfrett and The First National Bank of Dana, Appellants–Defendants,

v.

BANK ONE, CRAWFORDSVILLE, NA, Appellee–Plaintiff.

No. 61A01–9803–CV–114.

Court of Appeals of Indiana.

June 24, 1999.

Eric A. Frey, Terre Haute, Indiana, Attorney for Appellants.

Alan S. Brown, Julia Blackwell Gelinas, Nelson D. Alexander, Locke Reynolds Boyd & Weisell, Indianapolis, Indiana, J. Lamont Harris, Henthorn Harris Taylor & Weliever, Crawfordsville, Indiana, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge

Wabash Grain, Inc., Stephen M. Syfrett, and The First National Bank of Dana (collectively "Wabash") appeal the trial court's order granting Bank One, Crawfordsville, NA.'s ("Bank One") renewed motion for summary judgment. Wabash raises three issues which we consolidate and restate as:

(1) whether the trial court erred in ruling on the renewed motion for summary judgment; and,

(2) whether the trial court erred in granting Bank One's renewed motion for summary judgment.

In addition, Bank One raises one issue on cross-appeal which we restate as whether the trial court erred in denying Bank One's alternative motion for summary judgment. We affirm.

The facts most favorable to Wabash follow. In 1993, Bank One loaned Wabash money to finance inventory and a recently constructed grain bin. Bank One extended the grain bin construction loan several times. Both parties signed all of these agreements and extensions. In addition, Syfrett personally guaranteed the loan. Eventually, the parties executed a note on July 14, 1994, for $260,000 that extended the grain bin construction loan to August 31, 1994. Wabash then defaulted on the note.

In 1995, Bank One filed a complaint against Wabash and Syfrett seeking to collect on both the note and Syfrett's personal guaranty. Wabash filed a counterclaim based upon theories of promissory estoppel, fraud, and breach of an alleged oral agreement. Specifically, Wabash claimed that Bank One had orally agreed to lend Wabash the $260,000 on a seven year repayment schedule. In response, Bank One filed a motion for summary judgment on both its complaint and Wabash's counterclaim designating and relying upon Wabash's admission that it had defaulted on the promissory note. The trial court denied the motion. Bank One later filed a second motion for summary judgment arguing the parole evidence rule excluded any evidence contradictory to the promissory note. Again, the trial court denied the motion.

Bank One later renewed its first motion for summary judgment asking the trial court to reconsider its decision in light of *Ohio Valley Plastics, Inc. v. Nat'l City Bank,* 687 N.E.2d 260 (Ind.Ct.App.1997), *trans. denied.* The trial court granted the motion in favor of Bank One on both Bank One's complaint and Wabash's counterclaim.

I.

The first issue is whether the trial court erred in ruling on the renewed motion

for summary judgment. Wabash contends that the trial court ruled upon the motion without following the procedures established under T.R. 56. Bank One responds by arguing that the trial court merely acted upon its motion to reconsider its earlier motion for summary judgment. We have held that a trial court has an inherent power to reconsider, vacate, or modify any previous order so long as the case has not proceeded to final judgment. *Squires v. Utility/Trailers of Indianapolis, Inc.*, 686 N.E.2d 416, 419 (Ind.Ct. App.1997). Here, the trial court reconsidered a motion for summary judgment that had been previously denied and then issued its opinion the day after trial had been set to begin. Thus, the case had not proceeded to final judgment. Therefore, the trial court did not err in reconsidering its previous order denying Bank One's motion for summary judgment. *See id.*

## II.

The second issue is whether, in reconsidering its previous order, the trial court erred in granting Bank One's motion for summary judgment. Wabash contends that the applicable statute of frauds does not require a single writing signed by both parties and the statute does not preclude the use of waiver and estoppel defenses. Bank One argues that the statute requires a single writing signed by both parties and that such a writing does not exist between it and Wabash that extends the $260,000 note for seven years.

■ Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's entry of summary judgment, we are bound by the same standard as the trial court. *DeBaets v. National Educ. Ass'n–South Bend*, 657 N.E.2d 1236, 1238 (Ind.Ct.App. 1995), *trans. denied.* The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater*, 631 N.E.2d 511, 513

(Ind.Ct.App.1994) *reh'g denied.* Once the movant meets these two requirements, the burden shifts to the nonmoving party to set forth specifically designated facts showing the existence of a genuine issue. *Id.* The party that lost in the trial court has the burden of persuading us that the trial court's decision was erroneous. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431 (Ind.1993). Where, as here, the trial court enters specific findings of fact and conclusions of law, they do not bind us but merely aid our review by providing us with a statement of reasons for the trial court's actions. *See Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). The trial court's ruling on a motion for summary judgment may be affirmed on any theory supported by the evidence of record. *Houin v. Burger by Burger*, 590 N.E.2d 593, 596 (Ind. Ct.App.1992), *trans. denied.*

■ The applicable statute of frauds, Ind. Code § 32–2–1.5–5, covers the requisites for maintaining an action upon "agreements to enter into new credit agreements or to modify prior credit agreements." It reads:

"A debtor may bring an action upon an agreement with a creditor to enter into a new credit agreement, amend or modify a prior credit agreement, forbear from exercising rights under a prior credit agreement, or grant an extension under a prior credit agreement only if the agreement:

(1) is in writing;

(2) sets forth all the material terms and conditions of the agreement; and

(3) is signed by the creditor and the debtor."

I.C. § 32–2–1.5–5. "Creditor," as defined under this chapter, includes "a bank." I.C. 32–2–1.5–2(1). "Debtor," as defined under this chapter, refers to a person who "obtains credit under a credit agreement with a creditor," "seeks a credit agreement with a creditor," or "owes money to a creditor." I.C. 32–2–1.5–3(2). Finally, "credit agreement," as defined under this chapter, means an agreement to:

"(1) lend ... money, ...;

(2) otherwise extend credit; or

(3) make any other financial accommodation."

I.C. 32–2–1.5–1. The present case is one of the few cases to be decided under this particular statute of frauds that was enacted in 1989 by P.L. 275–1989. *See Paulson v. Centier Bank*, 704 N.E.2d 482, 491 (Ind.Ct.App. 1998) (holding that the promissory note in question was dated prior to the enactment of the statute and therefore outside its scope), *reh'g denied, trans. denied; Ohio Valley Plastics*, 687 N.E.2d at 264 (holding that a borrower's claim was barred by the statute).

■ Wabash first argues that I.C. § 32–2–1.5–5 should not be construed so as to require a single written document that contains all "material terms and conditions of the agreement" and is signed by both parties. We may not construe a statute when its plain language is unambiguous. *Department of Revenue of State of Ind. v. There To Care, Inc.*, 638 N.E.2d 871, 873 (Ind.Ct.App. 1994) *trans. denied.* Rather, we presume words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent ambiguity or a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth*, 590 N.E.2d 154, 157 (Ind.Ct.App.1992), *trans. denied.* Here, the language of the statute is quite unambiguous. In fact, we do not see how the legislature could have made its purpose any clearer. To effectuate an agreement to lend money, the parties to the agreement must put in writing all the material terms and conditions of the agreement and then sign that written document. I.C. § 32–2–1.5–5. Despite this, Wabash contends that such a requirement is contrary to business practice. However, Wabash cites no authority for its position.[1] Consequently, we see no reason to invade the province of the legislature and rewrite I.C. § 32–2–1.5–5.

■ Wabash next argues that I.C. § 32–2–1.5–5 should not apply to claims of promissory estoppel or waiver which it claims are defenses to the statute of frauds. In *Ohio Valley Plastics*, we held:

> "The substance of an action, rather than its form, controls whether a particular statute has application in a particular law-

suit ... [and] ... [r]egardless of whether the present cause of action is labeled as a breach of contract, misrepresentation, fraud, deceit, promissory estoppel, its substance is that of an action upon an agreement by a bank to loan money.

\* \* \* \* \*

> ... a claim of estoppel or fraud will not operate to remove a case from a Statute of Frauds where the promise relied upon is the very promise that the Statute declares unenforceable if not in writing.

> 'Were this not the rule the statute would be rendered virtually meaningless because the frustrated claimant would always assert an oral promise/agreement to defeat by means of estoppel the statute's requirement for a written one. The contest would then concern the credibility of the evidence of an oral promise of agreement. That of course, is precisely what the statute seeks to avoid.'"

*Ohio Valley Plastics*, 687 N.E.2d at 264. Consequently, I.C. § 32–2–1.5–5 applies to defensive claims of promissory estoppel or waiver. *See id.*

■ Nonetheless, a case may be removed from the operation of the statute of frauds where an estoppel has been established by showing:

> "' ... that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.'

> In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury are sufficient to remove the claim from the operation of the Statute of Frauds."

*Id.* (*quoting Whiteco Industries, Inc. v. Kopani*, 514 N.E.2d 840, 844 (Ind.Ct.App.1987), *trans. denied*). Here, Wabash designates no

---

**1.** Although the failure to cite any support for one's argument may result in waiver, we decide to address this issue on the merits. *See* Ind. Appellate R. 8.3(A)(7).

evidence demonstrating how its reliance upon the oral agreement to extend the loan caused it an "injury so substantial and independent as to constitute an unjust and unconscionable injury." ⸗ Therefore, we do not consider this argument.

### III.

Finally, Bank One argues that the trial court erred in denying its second motion for summary judgment. Specifically, Bank One sought to have the trial court order any parole evidence excluded from consideration. As we have resolved the first two issues in Bank One's favor, we need not address this issue further because under the circumstances of this appeal it is moot.

For the foregoing reasons, we affirm the trial court's order granting Bank One's motion for summary judgment.

Affirmed.

RUCKER, J., and BAILEY, J. concur.