Clifford BROWN, Appellant–Defendant,

v.

Rhonda BRANCH, Appellee–Plaintiff.

No. 07A04–9907–CV–339.

Court of Appeals of Indiana.

July 31, 2000.

James T. Roberts, Nashville, Indiana, Attorney for Appellant.

Thomas M. Barr, Nashville, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

*Case Summary*

Clifford Brown appeals from the trial court's decision ordering him to convey property to Rhonda Branch. We affirm.

*Issues*

Clifford raises three issues for our review, which we restate as:

1. Whether the trial court properly denied Clifford's motion for summary judgment;

2. Whether the Statute of Frauds prohibits enforcement of an oral promise; and

3. Whether the trial court's findings of fact and conclusions of law that the elements of promissory estoppel were met were supported by sufficient evidence.

*Facts and Procedural History*

Clifford and Rhonda were involved in an on-again, off-again relationship that spanned ten years. Clifford owned a home on State Road 135 where during the relationship both Clifford and Rhonda lived together and also spent time working on and repairing the house. At one point during the relationship, Rhonda had moved to Missouri. While Rhonda was there, Clifford and Rhonda had a telephone conversation wherein Clifford stated that if Rhonda were to move back to Indiana, she would "always have the 135 house." R. 82. Although Rhonda stated in her testimony that she had decided to return to Indiana prior to Clifford's promise of the house, her testimony later clarified that the promise of the house was a major influence and factor in her decision to return to Indiana.

The relationship eventually ended and Rhonda brought suit against Clifford, alleging, among other things, that Clifford "made certain express promises to [Rhonda] upon which she relied to her detriment." R. 14. Clifford filed a motion for summary judgment which was denied. After the trial, the trial court found that, with respect to the 135 house, the elements of promissory estoppel had been met. Therefore, the trial court ordered that Clifford convey the house to Rhonda "subject to the indebtedness existing on that property." R. 326. Clifford now appeals.

*Discussion and Decision*

## I. *Summary Judgment* [1]

The purpose of summary judgment is to end litigation where no factual dispute exists and which may be determined as a matter of law. *Choung v. Iemma*, 708 N.E.2d 7, 11 (Ind.Ct.App.1999). On review of a trial court's decision to deny summary judgment, our standard of review is well settled. We apply the same standard of review as the trial court: we must decide whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Fawcett v. Gooch*, 708 N.E.2d 908, 909 (Ind.Ct.App.1999).

Summary judgment is appropriate only if "the evidence sanctioned by Ind. Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Id.* (citing *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 169 (Ind.1996)). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

*Choung*, 708 N.E.2d at 11. Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubts as to any facts or inferences to be drawn therefrom will be resolved in favor of the non-moving party. *Id.*

■ Clifford asserts that his motion for summary judgment should have been granted. He claims that Rhonda made two motions to submit additional evidence and that the trial court never made a formal ruling on them; thus, Clifford argues that "it appears that the Court improperly considered the non-designated material in making its ruling." Brief of the Appellant at 15. Clifford has neglected to note that he had the burden to make a prima facie case that there was no genuine question of material fact. Thus, if his own designation of evidence, including Rhonda's deposition and his own affidavit, raised a genuine issue of material fact, then the denial of the motion for summary judgment was appropriate.

Clifford concedes that Rhonda's deposition provided "an inference that she felt differently about her decision because of the promise." *Id.* In Clifford's affidavit, he stated that "there were no promises or representations made ... to [Rhonda] to induce her to stay in the relationship." R. 39. However, in Rhonda's deposition, she states that Clifford "on his own free will, told me I could, I would have the 135 house if it didn't work out." R. 138. This evidence is clearly in conflict and alone creates a genuine issue of material fact: whether or not there was any promise

---

1. Rhonda contends that Clifford has waived this issue for our review because he "challenges this ruling for the first time on appeal, and accordingly has waived that challenge." Brief of the Appellee at 1. However, "[d]enial of summary judgment may be challenged by a motion to correct errors after a final judgment or order is entered." Ind. Trial Rule 56(E). Therefore, Clifford did not have

to immediately pursue an appeal after the denial of his motion for summary judgment: "failure to bring an interlocutory appeal from the denial of summary judgment does not waive appellate review after final judgment is entered." *Lutheran Hosp. of Fort Wayne, Inc. v. Doe*, 639 N.E.2d 687, 689 n. 5 (Ind.Ct.App. 1994), *trans. denied.*

made with respect to the 135 house. Therefore, regardless of whether the trial court may have made its decision based in part on additional, non-designated evidence, there was enough information in the evidence designated by Clifford alone to support the fact that a material question of fact existed, and therefore, the denial of summary judgment was appropriate.

■ Further, Clifford asserts that "[t]here was no evidence before the Court on [Clifford's] Motion for Summary Judgment or [Rhonda's] response thereto that would indicate that Rhonda's return to [Indiana] was in reliance upon Clifford's promise." Brief of the Appellant at 16. However, summary judgment is appropriate *only* when there are no issues of material fact; it is not necessary that every element of a cause be proven by designated evidence in order for a trial court to deny a motion for summary judgment.

## II. *Statute of Frauds—Sale of Land & Conveyance*

■ Clifford argues that the Statute of Frauds requires that any conveyance of land must be in writing. He cites *Wabash Grain, Inc. v. Bank One, Crawfordsville, NA*, 713 N.E.2d 323 (Ind.Ct.App.1999), which holds that " 'a claim of estoppel or fraud will not operate to remove a case from the Statute of Frauds where the promise relied upon is the very promise that the Statute declares unenforceable if not in writing.' " *Id.* at 326 (quoting *Ohio Valley Plastics, Inc. v. National City Bank*, 687 N.E.2d 260, 264 (Ind.Ct.App. 1997), *trans. denied*). However, in order for the Statute of Frauds to be applicable at all, it must be determined whether an oral promise to *give* another person property falls within the ambit of the Statute of Frauds.

The Statute of Frauds is codified at Indiana Code sections 32–2–1–1 through 32–2–1–18. Indiana Code section 32–2–1–1 states that "[n]o action shall be brought in any of the following cases: . . . [u]pon any contract for the *sale of lands* . . . [u]nless the promise, contract or agreement upon which such action shall be brought . . . shall be in writing." (emphasis added).[2]

Clifford argues that his oral promise of the 135 house is an "oral contract to convey the 135 house, clearly an action 'for the sale of lands.' " Brief of the Appellant at 17. Thus, he argues that the Statute of Frauds applies, and that the promise of the house had to be in writing. Rhonda counters by arguing that this transaction was not for the sale of land and therefore the promise of the 135 house to Rhonda does not fall within the Statute of Frauds.

■ Generally, in construing a statute we will only interpret a statute that is ambiguous. *Ballard v. State*, 715 N.E.2d 1276, 1279 (Ind.Ct.App.1999). We will not interpret the meaning of a statute that is clear and unambiguous on its face. *Moshenek v. Anderson*, 718 N.E.2d 811, 813 (Ind.Ct.App.1999). "A statute is ambiguous when it is susceptible to more than one interpretation." *Ballard*, 715 N.E.2d at 1279. When a statute is ambiguous, we are "compelled to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity and difficulty and prefer public convenience." *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs.*, 693 N.E.2d 972, 974 (Ind.Ct.App.1998). In our interpretation, we must be mindful of the purpose of the statute and the effect of such an interpretation. *Id.* Further, in interpreting the statute, we will read the statute as a whole, attempting to give effect to all provisions so that no section is held meaningless if it can be reconciled with the rest of the statute. *Citizens Action Coalition of Indiana, Inc. v. Indiana Statewide Ass'n*

---

2. We note that the gift of land may, indeed, be a conveyance; however, the Statute of Frauds does not use the terms sale and conveyance interchangeably. *See* Ind.Code § 32–2–1–3 ("Every conveyance of any existing trust in lands . . . unless the same shall be in writing, signed by the party making the same . . . shall be void.").

*of Rural Elec. Coops., Inc.*, 693 N.E.2d 1324, 1327 (Ind.Ct.App.1998). The legislature's definition of a word binds us; however, "when the legislature has not defined a word, we give the word its common and ordinary meaning." *Id.* In determining the plain and ordinary meaning of words, we may consult English language dictionaries. *Id.* "Further, we presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.*

"Sale" is not defined to mean any specific thing within the Statute of Frauds. A sale, based on its common definition, is the exchange of something of value for something of value. Further, Black's Law Dictionary defines sale as "[a] contract between two parties, called, respectively, the 'seller' ... and the 'buyer,' ... by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter the title and possession of property." *Black's Law Dictionary* 1337 (6th ed. 1990). Thus, Clifford's promise of the 135 house to Rhonda was not a "sale." Clifford and Rhonda did not enter into a contract for the sale of the 135 house wherein Rhonda agreed to pay for or purchase the property. Although there may have been consideration for the promise of the house, Rhonda's returning to Indiana, certainly this was not the type of consideration contemplated when property is sold. Rhonda's promise to return was not a promise of value. *See Black's Law Dictionary* 1337 (6th ed. 1990) (sale as defined as "[t]ransfer of property as providing of services for consideration. A transfer of property for a fixed price in money or its equivalent.... A contract whereby property is transferred from one person to another for consideration of value...."). Therefore, we hold that the Statute of Frauds does not apply to this case because there was not a sale of land. Thus, no writing was necessary and the Statute of Frauds is not an appropriate defense for Clifford.

 Further, although Clifford is correct in his assertion of *Wabash Grain*'s holding, a case may be removed from the operation of the statute of frauds where an estoppel has been established by showing that the other party's refusal to carry out the agreement has resulted in not only a denial of the rights of the agreement but also "'the infliction of an unjust and unconscionable injury and loss.'" *Wabash Grain*, 713 N.E.2d at 326. Thus, a reliance injury which results in an unjust and unconscionable result is sufficient to remove the claim from the Statute of Frauds. *Id.*[3] However, because we hold that Clifford's oral promise of the 135 house to Rhonda does not constitute a contract for the sale of land and thus, the Statute of Frauds does not apply, we need not discuss whether the injury was such that the claim would otherwise be removed from the Statute of Frauds. In our final inquiry, we must decide whether the trial court properly determined that the doctrine of promissory estoppel applied to the facts of this case.

### III. *Promissory Estoppel*

 The trial court made findings of fact and conclusions of law which were a part of its ultimate decision. Upon review of a trial court's decision, we determine if the evidence supports the findings and then whether those findings support the judgment. *Bertholet v. Bertholet*, 725 N.E.2d 487, 495 (Ind.Ct.App.2000). We will not set aside the trial court's findings or judgment unless they are clearly erroneous. *Id.* "A finding is clearly erroneous when there is no evidence or inferences reasonably drawn therefrom to support it." *Id.* Further, when the

---

**3.** Further, "Indiana permits the enforcement of oral promises which are within the Statute of Frauds where such promises would otherwise be enforceable under the doctrine of promissory estoppel." *Tipton County Farm Bureau Co-op., Ass'n, Inc. v. Hoover*, 475 N.E.2d 38, 41 (Ind.Ct.App.1985), *trans. denied.*

judgment is unsupported by the findings of fact and conclusions entered on the findings, it is clearly erroneous. *Id.* In making our determination, we review the evidence in the light most favorable to the trial court's decision. *Citizens State Bank v. Peoples Bank,* 475 N.E.2d 324, 327 (Ind.Ct.App.1985). We will not reweigh the evidence or judge the credibility of the witnesses. *Bertholet,* 725 N.E.2d at 495. We may affirm the trial court's decision on any legal theory supported by the findings if the theory is consistent with the findings and any reasonable inferences to be drawn therefrom. *Id.*

 A promissory estoppel claim has five elements: 1) a promise by the promissor (here Clifford); 2) made with the expectation that the promisee (here, Rhonda) will rely thereon; 3) which induces reasonable reliance by the promisee; 4) of a definite and substantial nature; and 5) injustice can be avoided only by enforcement of the promise. *Weinig v. Weinig,* 674 N.E.2d 991, 997 (Ind.Ct.App.1996).

> The doctrine of estoppel springs from equitable principles and is designed to aid the law in the administration of justice where, without its aid, injustice might result. Its purpose is to preserve rights previously acquired and not to create new ones.... Estoppel is 'the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment.'

*Id.* "Thus, a promissor who induces a substantial change of position by the promisee in reliance upon a promise is estopped to deny enforceability of the promise." *Id.*

Clifford argues that not all of the elements were met or supported by evidence, specifically, elements number 1) promise made; 3) inducement and reasonable reliance; 4) definite and substantial reliance;

and 5) injustice that can be avoided only by enforcement of the promise.

## A. *Promise Made*

 Clifford argues that "[o]ne of the dilemmas created by an attempt by a Court to make a *contract* out of words ... is the inherent risk of vagueness, ambiguity and just plain misunderstanding between the parties." Brief of Appellant at 20, (emphasis added). First, it is imperative to note that the trial court's decision was based on promissory estoppel, not breach of contract.[4] Although the trial court did use the phrase "[i]n order to establish a contract based on promissory estoppel ..." Rhonda was only required to show the five elements of promissory estoppel; she was not required to establish an actual contract.

Clifford asserts that, in interpreting an oral situation, "[t]here becomes a contest of the credibility of the evidence of the oral promise." Brief of the Appellant at 20. He concedes in his brief that Rhonda testified that he said "[I will] always have the 135 house. He says I'm just, you won't be stuck out on the street. You will have a roof over your head." *Id.* Rhonda also testified that both she and Clifford had discussed the fact that Clifford had promised to deed the house over to her and that one day they were walking toward the car, presumably to go take care of the deed, and Clifford said to her, "you really think I meant it?" and then walked off. R. 505. Further, there was testimony from another witness which included the following: "I said to Clifford, [']Rhonda says that you ... promised to give her that house if things didn't work out between you.['] And Clifford said [']yes, but I didn't mean it.['] " R. 574.

We will not reweigh the evidence or judge the credibility of the witnesses. There was sufficient evidence to support

---

4. Clifford also argues that before a contract can be enforced, it must be sufficiently clear in its terms. Again, we remind Clifford that the trial court's decision was based on promissory estoppel, not breach of contract.

the trial court's finding that Clifford promised the 135 house to Rhonda.

### B. *Reasonable Reliance*

Clifford argues that Rhonda did not reasonably rely on his promise of the 135 house because she stated that she moved back to Indiana to be with Clifford and that her mind was made up to move back prior to the conversation in which Clifford made the promise. He therefore asserts that there was no evidence by which the trial court could have found that Rhonda relied on Clifford's promise. He further asserts that Rhonda knew Clifford had a drinking problem and that their relationship had been tumultuous. Thus, Clifford argues that Rhonda's reliance on anything that Clifford said would not be reasonable.

However, there was evidence before the trial court that Rhonda knew Clifford's promise to give her the 135 house meant that he was serious about his commitment to the relationship. Further, Rhonda testified that she knew that if she returned to Indiana and the relationship did not work out, the house would provide her a place to live. Again, we will not reweigh the evidence or judge the credibility of the witnesses. There was substantial evidence presented so the trial court's conclusion that Rhonda reasonably relied on Clifford's promise is not clearly erroneous.

### C. *Definite and Substantial Reliance*

Clifford acknowledges that Rhonda quit her job and schooling in Missouri in order to move back to Indiana. However, he argues that she had done this once before without any promise from Clifford and that she had decided to move back prior to the promise of the house. Therefore, Clifford argues that Rhonda's reliance was not substantial because "she would have suffered whatever expense and inconvenience whether the promise had been made or not." Brief of the Appellant at 22. Further, he asserts that her expense and inconvenience was reduced because he paid her moving expenses and

her rent for the eleven months after their break up.

Rhonda correctly states that "'[a]t the heart of equitable estoppel is a change in the promisee's position, a change that the promisee made in reliance on the promissor's statements.'" Brief of the Appellee at 19 (citing *Weinig*, 674 N.E.2d at 997). Here, Rhonda changed her position: she quit her job, quit her schooling, and moved from Missouri to Indiana, based, at least in part, upon the promise that if her relationship with Clifford did not work out, she would have the 135 house. Clifford induced Rhonda to leave Missouri and come back to Indiana by promising her the 135 house. Clifford, by inducing a substantial change in Rhonda's position through his promise of the house, cannot deny the enforceability of his promise. *Weinig*, 674 N.E.2d at 997.

Additionally, "one who acts to [her] detriment on the faith of a promise should be protected." *Id.* Certainly, Rhonda picking up and leaving her education, job, and home in Missouri to come to Indiana was to her detriment. She based her decision to leave her life in Missouri behind based, at least in part, on the promise made by Clifford of the 135 house.

Further, Rhonda was concerned about what she would do if the relationship did not work out, and the promise of the house led her to believe that "if it didn't work that I'd at least have a foundation and a roof over my head." R. 85. The house provided a "safety net" for Rhonda; if the relationship ended, she would not be out on the streets; she would have a home. The trial court's decision that Rhonda's reliance was definite and substantial was not clearly erroneous.

### D. *Injustice*

Clifford argues that Rhonda did not suffer an injustice that would require she receive the 135 house. He continues to argue that he paid for eleven months of her rent and gave her a family heirloom ring which "amply compensates her for

her inconvenience and incidental expenses." Brief of the Appellant at 24.

However, the evidence before the trial court showed that Rhonda left Missouri, quit her job, and dropped out of school to move to Indiana. After the end of the relationship, Rhonda was left with only some personal possessions. The trial court's decision that "the injustice suffered by Rhonda ... can only be avoided by the enforcement of Clifford's promise" was not clearly erroneous. R. 326.

### Conclusion

Because Clifford failed to establish that there were no genuine issues of material fact, the trial court did not err in denying his motion for summary judgment. Further, because the oral promise of the 135 house was not within the Statute of Frauds, it did not need to be in writing to be enforceable. Finally, there was sufficient evidence to support the elements of promissory estoppel. Thus, we hold that the trial court's decision against Clifford was proper.

Affirmed.

SHARPNACK, C.J., and MATHIAS, J., concur.