APPELLANT PRO SE
John Thomas Sees
Attorney at Law
Huntington, Indiana

ATTORNEYS FOR APPELLEE
Martin E. Seifert
Lori W. Jansen
Haller & Colvin, P.C.
Fort Wayne, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 35S02-0406-CV-277

JOHN THOMAS SEES,

*Appellant (Petitioner below),*

v.

BANK ONE, INDIANA, N.A.,

*Appellee (Respondent below).*

_____

Interlocutory Appeal from the Huntington Circuit Court, No. 35C01-0012-CP-577
The Honorable Mark A. McIntosh, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 35A02-0309-CV-744

_____

**December 20, 2005**

**Rucker, Justice.**

The question presented is whether a statute that prohibits a debtor from "bring[ing] an action upon a credit agreement" unless it is in writing applies also to a debtor's assertion of an affirmative defense. We conclude it does not.

**Facts and Procedural History**

In August 1995, Bank One loaned Sees Equipment $500,000. John Thomas Sees ("Sees") and his brother Robert Sees, as officers of Sees Equipment, executed a note in favor of Bank One in that amount. Sees also executed an "Unlimited Continuing Guaranty" that assured full payment of all debts Sees Equipment owed. Sees Equipment was later sold, and the buyers assumed the Bank One debt. The buyers then defaulted. Bank One filed a complaint against all parties involved, including Sees as guarantor.

Thereafter, designating the guaranty agreement, Bank One filed a motion for summary judgment claiming no genuine issues of material fact existed as to Sees' liability as guarantor. In opposition, Sees argued that he was fraudulently induced to sign the agreement. According to Sees, he signed the document only after receiving an oral assurance from a loan officer that the purpose of the guaranty was to provide leverage to guarantee Sees' cooperation in the event of corporate default. Sees also filed a cross motion for summary judgment contending that the assurance amounted to an oral modification of the guaranty agreement. The trial court denied Sees' motion and entered summary judgment in Bank One's favor. On review the Court of Appeals affirmed, holding that the "signed writing" requirement of Indiana Code section 26-2-9-4 barred Sees from asserting an oral modification of a credit agreement or fraud in the inducement as an affirmative defense. See Sees v. Bank One, Indiana, N.A., 804 N.E.2d 227, 229-30 (Ind. Ct. App. 2004). Having previously granted transfer we now affirm in part and reverse in part the judgment of the trial court.[1]

---

[1] While this case was pending on transfer the parties settled their differences and filed a joint motion to withdraw this appeal and to dismiss it as moot. Although as between the parties this matter is now settled, we nonetheless believe the legal issues raised in this case are significant and warrant this Court's attention. We therefore deny the parties' motion.

## Discussion

## I.

Indiana Code section 26-2-9-4 provides:

> A debtor *may bring an action* upon a credit agreement only if the agreement:
>
> (1)     *is in writing;*
> (2)     sets forth all material terms and conditions of the credit agreement, including the loan amount, rate of interest, duration, and security; and
> (3)     is signed by the creditor and the debtor.

(Emphasis added). Sees does not dispute that he is a "debtor" and that the guaranty agreement is a "credit agreement" within the meaning of the statute. Sees contends, however, that he is not attempting to "bring an action" on the guaranty agreement but is instead seeking to interpose an affirmative defense to Bank One's claim. Pointing to the "in writing" provision, Bank One contends the statute prohibits Sees from asserting a defense or a claim based on the alleged oral representation of one of its agents. In support of its position Bank One cites Ohio Valley Plastics, Inc. v. National City Bank, 687 N.E.2d 260 (Ind. Ct. App. 1997), trans. denied, and Wabash Grain, Inc., v. Bank One, Crawfordsville, N.A., 713 N.E.2d 323 (Ind. Ct. App. 1999).

In Ohio Valley, a loan applicant applied to the Bank for a $300,000 line of credit to finance the purchase of a business. The Bank's loan officer consistently assured the applicant that the loan had been approved. In reliance on that representation the applicant wrote a check on the line of credit for approximately $90,000. Written with full knowledge of the loan officer and in his presence, the check bounced. In fact the line of credit had never been approved, and further, the officer had never submitted the loan application to the Bank's loan committee. Ohio Valley, 687 N.E.2d at 262. Citing lost business opportunities and damage to business reputation along with other damages, the loan applicant sued the Bank alleging fraud and promissory estoppel. The trial court granted summary judgment in the Bank's favor on the basis of the then existing statute, which, similar to the present statute, referred to "an action upon an agreement." The loan applicant appealed arguing that the statute did not apply because his lawsuit was based on theories of fraud and promissory estoppel and thus was not an "action upon an agreement."

3

Id. at 263. Rejecting this argument and referring to the statute as a Statute of Frauds, the Court of Appeals observed:

> The substance of an action, rather than its form, controls whether a particular statute has application in a particular lawsuit. . . . Regardless of whether the present cause of action is labeled as a breach of contract, misrepresentation, fraud, deceit, [or] promissory estoppel, its substance is that of an action upon an agreement by a bank to loan money. Therefore, the Statute of Frauds applies.
> . . .
> [A] claim of estoppel or fraud will not operate to remove a case from a Statute of Frauds where the promise relied upon is the very promise that the Statute declares unenforceable if not in writing.

Id. at 263-64 (citations omitted).

In Wabash Grain, the Bank sued a debtor and a guarantor, alleging default on a $260,000 loan. In response, the debtor and the guarantor filed a counterclaim based on theories of promissory estoppel, fraud, and breach of an alleged oral agreement that the bank would lend the debtor the money on a seven-year repayment schedule. Wabash Grain, 713 N.E.2d at 324. Affirming the grant of summary judgment in favor of the Bank, our Court of Appeals cited the above quote from Ohio Valley and continued, "Consequently [the statute] applies to defensive claims of promissory estoppel or waiver." Id. at 326.

Neither of the foregoing cases resolves the precise issue before us: whether the statute prohibits a debtor's assertion of affirmative defenses. Both cases involved debtor-initiated claims against a creditor. And although the court in Wabash Grain declared that the statute applies to "defensive claims," the defenses in that case were raised in the context of a debtor's counterclaim. Such a claim provides the vehicle through which a cause of action is prosecuted. See Braden v. Braden, 575 N.E.2d 293, 295 (Ind. Ct. App. 1991) (noting that a counterclaim must state facts sufficient to constitute a cause of action in favor of the defendant). The statute clearly prohibits a debtor's attempt to "bring an action" against a creditor "upon a credit agreement." We must resolve whether the statute also prohibits a debtor from asserting an affirmative defense as a freestanding claim to an action brought by a creditor.

4

The first step in interpreting a statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc., 746 N.E.2d 941, 947 (Ind. 2001). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Poehlman v. Feferman, 717 N.E.2d 578, 581 (Ind. 1999). Clear and unambiguous statutes leave no room for judicial construction. Id. However, when a statute is susceptible to more than one interpretation, it is deemed ambiguous and thus open to judicial construction. Amoco Production Co. v. Laird, 622 N.E.2d 912, 915 (Ind. 1993). And when faced with an ambiguous statute other well-established rules of statutory construction are applicable. One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. Neal v. DeKalb Co. Div. of Family & Children, 796 N.E.2d 280, 284 (Ind. 2003).

Although not specifically referring to tenets of statutory construction, the Court of Appeals concluded that at least one purpose of the "in writing" requirement of Indiana Code section 26-2-9-4 is to avoid a contest over the credibility of the evidence in an oral promise or agreement. According to the Court of Appeals, "[t]hat of course, is precisely what the statute seeks to avoid." Sees, 804 N.E.2d at 230 (citing Wabash Grain, 713 N.E.2d at 326). In essence the Court construed the statute not only as requiring a written agreement, but also as applicable to defensive claims as well. Sees, 804 N.E.2d at 230. We have a different view of this statute than that of our colleagues.

Beginning in the mid-1980's, in response to the increasing litigation brought by borrowers against creditors, much of which alleged oral promises on the part of creditors, a number of jurisdictions began enacting legislation to bring credit agreements within the Statute of Frauds. See John L. Culhane, Jr., Lender Liability Limitation Amendments to State Statutes of Frauds, 45 Bus. Law. 1779, 1779 (1990) (noting that "One of the principal legal developments of the last past decade has been the dramatic increase in the number of lawsuits brought against banks and other lending institutions by their borrowers and the concomitant emergence of an area of law devoted to lender liability."). The purpose of these statutes was to protect lenders from debtors' fraudulent claims. Todd C. Pearson, Limiting Lender Liability: The Trend Toward

5

Written Credit Agreement Statutes, 76 Minn. L. Rev. 295, 298-300 (1991).  As the Louisiana Supreme Court observed:

> These statutes were enacted primarily to limit the most frequent lender liability claims—those which involve assertions of breach of oral agreements to lend, to refinance or to forebear from enforcing contractual remedies—by requiring a writing as a prerequisite for a debtor to sue a lender and thus precluding debtors from bringing claims based on oral agreements.  The goal was to prevent bank customers from bringing baseless lender liability claims against banks alleging breaches of undocumented side agreements between the customer and one or more bank officers.

Whitney Nat'l Bank v. Rockwell, 661 So.2d 1325, 1329-30 (La. 1995) (citations omitted).

Consistent with this national trend, the Indiana Legislature in 1989 also enacted a lender liability statute.  Initially placed under the same title and article as the Statute of Frauds, the statute provided in relevant part:

> A debtor may bring an action upon an agreement with a creditor to enter into a new credit agreement . . . only if the agreement:
> (1)    is in writing;
> (2)    sets forth all the material terms and conditions of the agreement; and
> (3)    is signed by the creditor and the debtor.

Ind. Code § 32-2-1.5-5 (1989).  With only slight modifications not relevant here the statute was repealed in 2002 and re-codified under the same title and article as the Commercial Transactions Code.  See Ind. Code § 26-2-9-4.  Under the subheading "Credit Agreements," and referred to by our Court of Appeals as the Indiana Lender Liability Act (ILLA), the statute exists in its present form today.[2]

---

[2] In the first reported opinion discussing the statute since its 2002 re-codification, the Court of Appeals refers to it as the "Indiana Lender Liability Act."  See, e.g., Sees, 804 N.E.2d at 228.  Sees refers to the statute alternatively as the "Indiana Lender Liability Act" and the "Credit Agreement Statute."  See e.g., Appellant's Br. at 12.  Bank One refers to the statute as the "Credit Agreement Statute of Frauds."  See e.g., Br. of Appellee at 3.  We agree with the Court of Appeals' designation and thus refer to the statute as the Indiana Lender Liability Act.

In a number of jurisdictions credit agreement statutes, which some jurisdictions refer to as the statute of frauds, explicitly prohibit both debtors and creditors from asserting a defense unless the agreement is in writing.[3]  In some jurisdictions debtors are precluded from enforcing a creditor's side agreement not to enforce a contract unless the agreement is in writing.[4]  And at least in one jurisdiction the credit agreement statute explicitly prohibits a debtor from maintaining an action "on or in any way related to a credit agreement" unless it is in writing. 815 Ill. Comp. Stat. 160/2 (1989).  Not surprisingly, in those jurisdictions that have addressed the issue, courts have barred debtors from asserting oral side agreements as a defense to creditors' claims.  See, e.g., Nat'l Cmty. Bank of New Jersey v. G.L.T. Indus., Inc., 647 A.2d 157 (N.J. Super. 1994) (declaring that statute of frauds prohibited borrower's defense of alleged oral agreement to restructure debt in response to Bank's action on notes and guarantees); Teachers Ins. & Annuity Ass'n of Am. v. LaSalle Nat'l Bank, 691 N.E.2d 881 (Ill. Ct. App. 1998), (declaring credit agreement statute prohibits borrowers from asserting counterclaims or affirmative defenses against lenders based on oral agreements).  Indiana's statute is worded differently than the foregoing statutes.

We interpret the ILLA as prohibiting only debtor-initiated action against a creditor. Where the creditor brings an action against the debtor, the text of the Act itself does not bar the debtor from asserting an affirmative defense based on an alleged oral representation by the creditor.  In our view, interpreting the statute in this way is consistent with its plain meaning. Too, it is consistent with what we discern as the legislative intent in enacting the statute, namely: to protect lenders from lawsuits by debtors asserting fraudulent claims.  We also find support for

---

[3] For example in the State of Kansas, "A debtor or a creditor may not maintain an action for legal or equitable relief or a defense, based in either case upon a failure to perform on an alleged agreement, unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor."  Kan. Stat. Ann. § 16-118(a) (1998).  For similarly worded statutes, see Col. Rev. Stat. § 38-10-124 (1989); Neb. Rev. Stat. § 45-1,113 (1990); Okla. Stat. tit. 15, § 140 (1989); Utah Code § 25-5-4 (2004).

[4] For example in the State of New Jersey, "No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing . . . [a]n agreement by a creditor to forbear from exercising remedies pursuant to a contract, promise, undertaking or commitment . . . ."  N.J. Stat. § 25:1-5 (1996).  For similarly worded statutes, see Ariz. Rev. Stat. Ann. § 44-101 (1989); Ark. Code Ann. § 4-59-101 (1989); Conn. Gen. Stat. § 52-550a (1992); Del. Code tit. 6, § 2714 (1990); Haw. Rev. Stat. § 656-1 (1990); Iowa Code § 535.17 (1990); Ky. Rev. Stat. § 371.010 (1990) .

this interpretation of the statute in two other jurisdictions that have enacted statutes nearly identical to the ILLA.[5]   In both, the statutes have been construed to allow a debtor to raise affirmative defenses based on an alleged oral agreement.  See, e.g., Maynard v. Cent. Nat'l Bank, 640 So.2d 1212, 1213 (Fla. Ct. App. 1994) (holding that Florida's statute of frauds "prevents a debtor from bringing a claim based on an oral credit agreement but does not prevent a debtor from asserting affirmative defenses based on an oral credit agreement"); Hibernia Nat'l Bank v. Contractor's Equip. & Supply, Inc., 804 So.2d 760, 762-63 (La. Ct. App. 2001) (holding that Louisiana's credit agreement statute operates only to preclude "a borrower's affirmative actions for damages based on oral side agreements" and not to preclude a borrower's defenses in an action initiated by a creditor).  In sum we hold today that the provision of the Indiana Lender Liability Act that prohibits a debtor from "bring[ing] an action upon a credit agreement" unless it "is in writing" does not apply to a debtor's assertion of an affirmative defense.

In granting summary judgment in Bank One's favor the trial court found that Sees' defense violated the "statute of frauds."  Appellant's App. at 11.  As the Court of Appeals noted, although the trial court did not specifically address the ILLA in its order, the parties argued the ILLA's applicability at both the trial court level and on appeal.  As did the Court of Appeals we also "assume this is the 'statute of frauds' to which the trial court's order refers."  Sees, 804 N.E.2d at 229 n.1.  But as we have explained Sees was not prohibited from pursuing an affirmative defense under the ILLA.  Therefore the trial court erred in granting summary judgment in Bank One's favor.  On this issue we reverse the trial court's judgment.

## II.

In addition to opposing Bank One's motion for summary judgment by asserting fraudulent inducement as an affirmative defense, Sees also filed his own motion for summary judgment alleging that Bank One had orally modified the guaranty agreement.  The trial court denied Sees' motion.

---

[5] In the State of Florida, "A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."  Fla. Stat. § 687.0304(2) (1989).  Louisiana has a similarly worded statute.  See La. Rev. Stat. 6:1122 (1989).

8

When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard as the trial court. Bank of New York v. Nally, 820 N.E.2d 644, 648 (Ind. 2005). A party seeking summary judgment must show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); Fraternal Order of Police, Lodge No. 73 v. City of Evansville, 829 N.E.2d 494, 496 (Ind. 2005). The review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); Fraternal Order of Police, 829 N.E.2d at 496. The court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the non-moving party, and resolves all doubts against the moving party. Nally, 820 N.E.2d at 648 (Ind. 2005); Shambaugh & Son, Inc. v. Carlisle, 763 N.E.2d 459, 461 (Ind. 2002). When considering cross motions of summary judgment, the trial court is required to consider each motion separately construing the facts most favorably to the non-moving party in each instance. Young v. City of Franklin, 494 N.E.2d 316, 317 (Ind. 1986).

The Unlimited Continuing Guaranty, which was before the trial court as a part of the Rule 56 materials, included the following clause: "No modification or waiver of this Guaranty shall be effective unless it is in writing and signed by the party against whom it is being enforced." Appellant's App. at 30. In support of his claim that Bank One orally modified the Guaranty, Sees designated his Answer to Bank One's Complaint and the Affidavit of John T. Sees. Appellant's App. at 72. The relevant portions of Sees' affidavit alleged, "We initially declined to sign the agreement until we were told by [a bank representative] that the purpose of the guaranty was not to proceed against us personally, but only to provide leverage to guarantee our cooperation in the event of corporate default." Appellant's App. at 78.

It is certainly the case that parties may mutually modify contractual undertakings. Gorbett v. Estelle, 438 N.E.2d 766, 768 (Ind. Ct. App. 1982). Even a contract providing that any modification thereof must be in writing, nevertheless may be modified orally. Van De Leuv v. Methodist Hosp., 642 N.E.2d 531, 534 (Ind. Ct. App. 1994); First Nat'l Bank of New Castle v. Acra, 462 N.E.2d 1345, 1349 (Ind. Ct. App. 1984). But a claim that a contract has been modified presupposes that the contract has already been executed. Thus, any subsequent conduct, including an oral agreement, could serve to alter the original contract. See id. Here

9

however the statements upon which the alleged modification is based occurred before the guaranty agreement became final, namely, during contract formation.

As a general proposition a party is excluded from presenting extrinsic evidence of prior or contemporaneous oral agreements offered to vary or contradict the terms of a written contract. Paulson v. Centier Bank, 704 N.E.2d 482, 492 (Ind. Ct. App. 1998). Rather, a written contract is presumed to embody the parties' entire agreement. Keystone Square Shopping Ctr. Co. v. Marsh Supermarkets, Inc., 459 N.E.2d 420, 422 (Ind. Ct. App. 1984). There are exceptions of course, including a claim that a party was induced through fraudulent representation to enter the contract. Circle Ctr. Dev. Co. v. Y/G Indiana. L.P., 762 N.E.2d 176, 179 (Ind. Ct. App. 2002).

In light of our discussion in part I, Sees is not prohibited by the ILLA from pursuing a claim of fraudulent inducement as an affirmative defense. However, the oral representation on which Sees relies to support that claim does not also provide support for the notion that the guaranty agreement was modified. Instead, because the oral representation occurred before the guaranty became final there could be no modification as a matter of law. Essentially, there was nothing to modify. Sees is thus bound by the written agreement unless he is successful on his fraud claim, a matter about which we express no opinion.[6] Accordingly the trial court correctly denied Sees' cross motion for summary judgment.

---

[6] In his dissent Justice Boehm addresses the merits of Sees' fraud claim. We have declined to do so for several reasons. Foremost is that the merits of the claim were not the basis on which the trial court granted summary judgment in Bank One's favor. We are of course aware that in reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds the Trial Rule 56 materials support. Catt v. Bd. Of Comm'rs of Knox County, 779 N.E.2d 1, 3 (Ind. 2005). As the dissent points out, the Second Restatement of Contracts, along with a number of jurisdictions, are of the view that "a statement of present intention is a statement of existing fact and therefore potentially actionable as fraud." Dissent op. at 2 (citations omitted). Current Indiana precedent is to the contrary. Should we revisit this precedent? Why or why not? Neither the parties to this appeal nor the trial court addressed this point. And thus we do not have the benefit of briefing or analysis. The procedural posture of this case makes ruling upon the merits of Sees' fraud claim at least unnecessary and at most premature.

**Conclusion**

The judgment of the trial court is affirmed in part and reversed in part.

Dickson and Sullivan, JJ., concur.

Shepard, C.J., concurs and dissents with separate opinion

Boehm, J., concurs in part and dissents in part with separate opinion, in which Shepard, C.J., concurs.

**SHEPARD, Chief Justice, concurring and dissenting.**

I concur in the Court's opinion explicating the nature of the lender liability limitation amendment, but I would affirm the trial court's grant of judgment for the bank.

John Sees is hardly a borrower who just dropped off the turnip truck. He is a licensed lawyer. He and his brother obviously hoped to do well in their joint equipment company, a venture of sufficient size that the loan they sought at Bank One was $500,000. For all we know from the record, they did just fine.

Unsurprisingly for an enterprise of this size, the bank asked the principles to give their personal guarantees. Sees now claims "fraud" by the bank, saying that a banker told him the purpose of the guarantee was not really to collect against him in case of default.

Even if Sees were not a lawyer, the agreement he signed should make the claim unavailing. It is a pretty plain language sort of document. In it, Sees agrees that the "Guarantor's obligation under this Guaranty is UNLIMITED." He affirmatively represents that the guaranty is "valid and binding, enforceable according to its terms." He says in this writing that the guaranty "shall not be released or affected by…any act or omission of the Bank."

These written representations by Sees vitiate his contention that some banker told him the "real purpose of the guaranty was not to collect." Lawyer Sees obviously knew otherwise, and allowing him to resist on this basis will understandably make banks more wary of lending to Indiana lawyers.

**Boehm, Justice, concurring and dissenting.**

I concur in the majority's holding that the Lender Liability Act does not bar Sees' defense to the Bank's motion for summary judgment. However, I believe Sees has not established a defense and the Bank was nevertheless entitled to summary judgment. If Sees can avoid liability, the only available theory is that he is entitled to rescind or avoid the agreement based on fraud. I do not believe he has designated facts that are sufficient to defeat the Bank's motion for summary judgment. I therefore agree with the Chief Justice that the trial court properly rendered judgment for the Bank and there is nothing left to litigate.

Under the parol evidence rule, contemporaneous oral statements that contradict the terms of an integrated written agreement are inadmissible to vary or contradict the terms of the written agreement.[7] Franklin, 493 N.E.2d at 166; Circle Ctr. Dev. Co. v. Y/G Ind., L.P., 762 N.E.2d 176, 179 (Ind. Ct. App. 2002), trans. denied; Paulson v. Centier Bank, 704 N.E.2d 482, 492 (Ind. Ct. App. 1998), trans. denied; Tincher v. Greencastle Fed. Sav. Bank, 580 N.E.2d 268, 271 (Ind. Ct. App. 1991). Notwithstanding this general rule of inadmissibility, parol evidence is admissible to show that fraud or fraudulent representations induced a written agreement and therefore that the agreement is void. Peoples Trust & Sav. Bank v. Humphrey, 451 N.E.2d 1104, 1112 (Ind. Ct. App. 1983). To the extent Sees has alleged a theory that permits him to escape

---

[7] An integrated agreement is a writing constituting the final expression of one or more terms of the parties' agreement. Restatement (Second) of Contracts § 209 (1981). The question of whether an agreement is an integration is one of fact, that unlike other questions of fact, is decided by the judge as a question preliminary to application of the parol evidence rule. Id. In determining whether a writing is integrated, the judge should examine the writing itself to see whether it appears complete on its face and should also consider any other relevant evidence. Id. This was a typical commercial loan, not some exotic undertaking. The document entitled "Unlimited Continuing Guarantee" did not contain an integration clause, but the absence of an integration clause is not conclusive as to whether parties intend a writing to be completely integrated. Id. at § 209 cmt. b; Cf. Franklin v. White, 493 N.E.2d 161, 166 (Ind. 1986). In this case, there was ample evidence that the parties intended the loan agreement and guaranty to be their final agreement. First, the loan documents were not drafts leading up to the execution of a final written agreement but were the final written agreement. Second, on its face, the guaranty appeared complete and unambiguously named Sees as an unlimited guarantor. Third, the guaranty stated that "these provisions shall not be deemed to have been modified in any respect or relinquished by either the Bank or the Guarantor except by a written instrument executed by both of them," stating in so many words that the guaranty represents the entire agreement of the parties. Finally, there was simultaneous execution of the loan and guaranty agreements and advancement of the loan proceeds by Bank One, demonstrating that the parties intended the loan documents to constitute their final agreement.

liability, it is that this fraud exception to the parol evidence rule applies, and allows his fraudulent inducement claim to go forward. His reliance on the exception, however, is misplaced because he has not alleged facts that state a cause of action for fraud. In Indiana, to establish fraudulent inducement as a defense to enforcement of a contract, a party must show that statements made were:

(1) a material representation of past or existing fact,

(2) that was untrue and known to be untrue, or else recklessly made,

(3) that the party did in fact rely on the representation, and

(4) that the representation proximately caused the party to suffer injury.

Circle Ctr. Dev. Co., 762 N.E.2d at 179; Paulson, 704 N.E.2d at 490; Abbott v. Bates, 670 N.E.2d 916, 923 n.4 (Ind. Ct. App. 1996), reh'g denied.

Sees does not assert that Bank One made any statements of past or existing fact. Sees claims only that a Bank One agent told him that the purpose of the guaranty agreement was not to proceed against Sees personally. Sees concludes that this statement was false because Bank One has, by this suit, sought to enforce the guaranty agreement. If we take the statement Sees attributes to the Bank as a statement of present intention, it fails as an element of fraud under current Indiana precedent. Indiana law has not recognized a claim for fraud based on misrepresentation of the speaker's current intentions. Sachs v. Blewett, 206 Ind. 151, 155-156, 185 N.E. 856, 857 (1933) (stating that "A fraudulent intent alone is no[t] actionable," rejecting "the theory that where a contract is entered into with the intention of not carrying it out, an action will lie in tort for fraud because of the intention not to carry out the contract . . ."); Kopis v. Savage, 498 N.E.2d 1266, 1272 (Ind. Ct. App. 1986) (Fraud "cannot be based on . . . statements of existing intent which are not executed.").

Even if we were to revisit that doctrine, Sees would fail. The Second Restatement of Contracts and some jurisdictions take the position that a statement of present intention is a statement of existing fact and therefore potentially actionable as fraud. Restatement (Second) of Contracts § 159 cmt. d (1981); See, e.g., Major v. Christian County Livestock Mkt., Inc., 300 S.W.2d 246, 249 (Ky. 1957); Thieman v. Thieman, 218 S.W.2d 580, 585 (Mo. 1949); Kritzer v.

2

<u>Moffat</u>, 240 P. 355, 358 (Wash. 1925). But even under this view, the plaintiff must also show that reliance on the statement of intention is justified under the circumstances. <u>Restatement (Second) of Contracts</u> § 171. Even if Indiana were to adopt the Restatement position, in this case, Sees' reliance on the Bank One agent's statement was not reasonable. Sees claims that a Bank One agent told him that "the purpose of the guaranty was not to proceed against us [Sees] personally, but only to provide leverage to guarantee our cooperation in the event of corporate default." If this was a statement of Bank One's present intention, Sees was not entitled to rely upon it. It is true that guaranties are frequently required to "get the attention" of the guarantor to cause the debtor to pay up. But that does not mean they are unenforceable. Indeed, if it were the case that the guaranty could not be called, the guaranty agreement could not fulfill its purpose of getting the attention of the guarantor. Sees is himself an attorney fully capable of understanding that the guaranty put him on the hook for the borrowing. And as the Chief Justice points out, the document did that in no uncertain terms.

Finally, if the statement Sees attributes to Bank One is viewed as a promise not to enforce the guaranty, a breach of a promise to abstain from some act in the future does not constitute fraud. <u>Paulson</u>, 704 N.E.2d at 490; <u>Maynard v. 84 Lumber Co.</u>, 657 N.E.2d 406, 409 (Ind. Ct. App. 1995); <u>Middelkamp v. Hanewich</u>, 147 Ind. App. 561, 567, 263 N.E.2d 189, 192 (1970). These facts also do not support a claim for constructive fraud.[8]

---

[8] Constructive fraud arises by operation of law from a course of conduct that, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud. <u>Drudge v. Brandt</u>, 698 N.E.2d 1245, 1250 (Ind. Ct. App. 1998). This theory of fraud is based on the premise that there are "[S]ituations which might not amount to actual fraud, but which are so likely to result in injustice that the law will find a fraud despite the absence of fraudulent intent." <u>Scott v. Bodor, Inc.</u>, 571 N.E.2d 313, 324 (Ind. Ct. App. 1991). A claim of constructive fraud requires, at a minimum, the existence of a duty on the part of the party to be charged arising out of the parties' relationship. <u>Strong v. Jackson</u>, 777 N.E.2d 1141, 1147 (Ind. Ct. App. 2002), <u>trans. denied</u>. Such a duty exists in fiduciary relationships and in relationships of trust and confidence. <u>Id.</u> at 1146-47. But "the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence." <u>Huntington Mortgage Co. v. DeBrota</u>, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998) (citations omitted). <u>See also</u> <u>Block v. Lake Mortgage Co.</u>, 601 N.E.2d 449, 452 (Ind. Ct. App. 1992), <u>reh'g denied</u>, ("A fiduciary relationship does not exist between a lender and a borrower unless certain facts exist which establish a relationship of trust and confidence between the two."). Sees has no claim for constructive fraud because he and Bank One had no special relationship. Rather, they were engaged in an ordinary arms length business transaction.

3

There can be actionable fraud where a lender actively conceals or misrepresents the content of a loan or suretyship agreement. Fassnacht v. Emsing Gagen Co., 18 Ind. App. 80, 84, 46 N.E. 45, 46 (1897). However, in this case, Sees does not contend that Bank One concealed or misrepresented the *contents* of the guaranty agreement, i.e. the provisions that unambiguously stated that Sees was assuring full payment of all debts Sees Equipment owed. He does not contend that he was induced to sign the guaranty agreements because he thought or was told that the terms of the guaranty agreements imposed no personal liability on him. Nor does he claim that Bank One concealed from him the fact that the terms of the guaranty agreements impose liability. He also does not contend that he failed to read the agreement or that he was ignorant of its contents. Sees also makes no allegation that Bank One and its agent had no intention of carrying out the promise not to hold him personally liable at the time it was made. He alleges only that the promise was not performed. Accordingly, Sees has failed to allege any act of concealment or misrepresentation by Bank One that would support a claim for fraud.

Shepard, C.J., concurs.

4